1. **Notice:** POSSESSION OF LAND. The possession of land is sufficient notice to a person taking a mortgage thereon from the holder of the legal title of the equitable title which the person in possession has in the land.

2. ———: ———: EXTENT OF NOTICE. Actual possession of a part is legal possession of the whole of a tract covered by the title under which the actual possession of the part is taken, and possession of the part will impart notice of the possessor's title to the whole tract.

3. **Estoppel:** FACTS NOT CONSTITUTING. Where D. and P., the legal title holders, mortgaged to the plaintiff a section of land, the half of which had been sold, but not deeded, to J., who was in possession, and the money borrowed on the faith of the mortgage was applied partly to discharge a prior mortgage placed by D. and P., without the knowledge of J., on the whole section, and partly to the payment of certain judgments against D. and J., or P. and J.—the purpose being to discharge the liens against D. and P.—and it appeared that J. had no knowledge at the time that his land was covered by plaintiff's mortgage, and there was no evidence that he knew the manner in which the money borrowed of the plaintiff was to be appropriated, and it was not shown that the appropriation of the money was made through his procurement or upon his request; *held*, that he was not estopped from resisting the enforcement of the mortgage against his land. ADAMS, J., *dissenting*.

*Appeal from Webster District Court.*

THURSDAY, JULY 13.

ACTION to foreclose a mortgage. There was a decree of foreclosure as to part of the land, and the petition as to the other part was by the decree, in effect, dismissed. The plaintiffs appeal. The facts of the case appear in the opinion.

*J. F. Duncombe*, for appellant.

*M. D. O'Connell*, for appellee.

BECK, J.—I The mortgage which is the foundation of the action, was executed January 2, 1877, by Daniel O. Connelly and Patrick Connelly, with their wives, and conveyed

the south half of section 25, township 89, north, range 29 west, and east half of section 25, towhship 89, north, range 39 west.

The defendants, James Connelly and his wife, in their answer allege that. in June, 1868, Daniel O. Connelly, the father of James, being indebted to him for services of himself for five years, and for the service of his wife for one year, sold to him and his wife the east half of section 25 above described in payment of this indebtedness. No deed or other writing witnessing the sale was executed, but the defendant James at once took possession of the land, a house having been built thereon by his father which he occupied with his family as his home, and paid taxes on the land from 1868 until the present time. He claims that at the time the mortgage was executed he was the owner of the land of which his possession gave notice to the world.

The plaintiffs in reply to the answer of defendants, James and his wife, deny their interest in, and claim to, the land, and aver that it was the property of the father Daniel O. Connelly. They further allege that the mortgage, which plaintiffs seek to foreclose, was given for money loaned by them, which was applied to the payment of a mortgage executed by Daniel O. and Patrick Connelly to the Ætna Life Insurance Company upon the land in question, and to the satisfaction of several judgments against James, which were liens upon the land. Plaintiffs claim that by reason of these facts and transactions defendants, James and his wife, are estopped to set up any interest or title they may hold in and to the land against plaintiffs mortgage.

By the decree rendered in the court below the mortgage was foreclosed as to the south half of section 19, and foreclosure was refused as to the land claimed by defendants James Connelly and his wife. Certain defenses were pleaded by the defendants other than James and his wife, which need not be here further noticed as no appeal was taken in that branch of the case. We are only required to determine

whether the evidence and the law supports the decree of the District Court discharging the land claimed by James Connelly and wife from the lien of the mortgage.

II. We think the evidence satisfactorily establishes a sale of the land in question in 1868 to James by his father. James testifies positively to such sale and his evidence is corroborated by the testimony of his wife and brother-in-law, Fitzpatrick. The same witnesses testify that James had served his father for about seven years after he attained his majority, and his wife, after his marriage, had rendered service to the father for one year. The land was given by the father in payment for these services. In 1868 James and his wife went into possession of the land, and afterwards used and occupied it as his own property. They paid the taxes upon the land and plowed about 120 acres and made other improvements thereon. The sale of the land and the possession thereunder by James, we think, is clearly shown.

Their possession and cultivation of the land was sufficient to put the plaintiffs in this case upon inquiry and impart notice of the interest in, and equitable title to, the land held by James. This conclusion is based upon elementary principles of the law. See 4 Kent's Com., p. 179, *et seq.* Wade on Notice, sections 273–279; 2 Leading Cases in Equity (Am. Notes), p. 165. The inquiry thus suggested would have revealed to the plaintiff the equitable title held by James Connelly to the land.

1. NOTICE: possession of land.

III. We are required in the next place to determine the extent of the interest of which the possession of James gave notice, or in other words, the quantity of land which he can hold free from the mortgage. The half section of land in controversy was not wholly inclosed by fences and was not wholly cultivated. About 120 acres were plowed, the remainder was unbroken prairie. The cultivated land was partly upon each quarter section, but probably it did not extend to each forty of the tract. Plaintiffs'

2. ——: ——: extent of notice.

counsel insist that if defendant's possession of the land imparted notice of his equities, they extended no further than to cover the land in actual cultivation.

It is a well settled rule applicable to the question of adverse possession of lands, when the protection of the statute of limitations is invoked, that actual possession of a part is legal possession of the whole of a tract covered by the title under which the actual possession of the part is taken, and that possession of the part will impart notice of claim to the whole tract. *Langworthy v. Myers et al.*, 4 Iowa, 18; 2 Washburn, on Real Property, p. 497, Sec. 36; p. 500, Sec. 44, and notes. *Anderson v. Darley*, 1 Nott. & McC., 369; *Eifert v. Reed*, Id., 374; *Bailey v. Carleton*, 12 N. H., 9; *Little v. Medquire*, 2 Me., 176; *Cluggage v. Duncan*, 1 Serg. & R., 111.

The reasons which support this rule require us to apply it to the case of notice of an equitable title imparted by possession. When the question is one of adverse possession, occupancy of a part of the land will carry the possession to the whole tract for the reason that the possession is presumed to be as broad as the claim of title. No other rule would be just and equitable in this country where it often happens that the whole of a tract is not reduced to actual possession by inclosure and cultivation. Besides, the lands being subdivided by government surveys—the unit of such subdivision being the section (see *Martin v. Cole*, 38 Iowa, 141), claims of title are usually limited in extent by such surveys. The quantity of the land owned by each citizen is not uniform. It may be the unit of the government survey, a section of 640 acres, or the one-sixteenth of a section, of 40 acres. But whatever be the quantity, it usually conforms to some government subdivision. Now the notice of his equity imparted by the possession of the land-owner who holds no recorded title, ought to extend to his claim as limited by the government survey. Indeed, we think, in our own State no one would entertain the thought that a citizen, who has commenced the improvement of a farm by breaking a few acres of

prairie, would limit his claim to the land he actually reduced to cultivation or enclosed with a fence. It would, in such a case, be understood that his claim extended to a government subdivision and the person put on inquiry by his possession would seek of him information as to its extent. It cannot be doubted that a possession sufficient to impart notice of an equity, may be of such a nature as would suffice to constitute adverse possession.

Adverse possession of a part, as we have seen, is construed to extend to, and cover the entire tract claimed by the possession. Under these cases possession of part imparts notice of the claim to the whole tract covered by the equity under which the land is held.

IV. Counsel for plaintiffs insist that defendants are estopped to set up their claim to the land for the reason that the 3. ESTOPPEL: money borrowed upon the faith of the mortgage facts not constituting. was appropriated to the payment of another mortgage executed by Daniel O. Conelly upon the land, and to the payment of certain judgments against the defendant James.

It is shown that James had no knowledge of the execution of the mortgage just spoken of, and it is not shown that the judgments were rendered for debts which he owed as principal. In all of them, we believe, his father, or Patrick Connelly, or both, were also defendants. It was the purpose in paying the judgments to discharge the liens standing against Daniel O. and Patrick Connelly. It is shown that James had no knowledge at the time that his land was covered by the plaintiff's mortgage, and there is no evidence that he knew the manner in which the money borrowed by plaintiff was to be appropriated; certainly, it is not shown that the appropriation of the money was made through his procurement or upon his request. We think there exists no ground upon which the estoppel will rest, precluding him from resisting the enforcement of the mortgage against his own lands. The foregoing discussion disposes of all questions arising in

the case.   In our opinion the decree of the District Court is correct and ought to be

AFFIRMED.

DAY, J.—If the plaintiff's mortgage had been taken only upon the portion of the land claimed by James Connelly, of which there was no visible possession, there would be great doubt whether the possession of a part not included in the mortgage would operate as notice to the plaintiff, for if a party buys, or takes a mortgage upon a forty of land to which his vendor or mortgagor has the legal title, and the property is not visibly in the possession of any one, by improvement or otherwise, there is nothing to put him upon inquiry.   But this case is different.   Here the plaintiff took a mortgage upon the whole east half of section 25.   There was a house on one forty of it, in which it is conceded the defendant was living at the time.   The mortgagee was thus put upon inquiry.   When a party is placed upon inquiry, he is affected with notice of all the facts which inquiry would have elicited. If the mortgagee in this case had inquired of James Connelly by what right he occupied the forty acres on which he was living, he would have learned that he claimed to own the whole half section.   Now the mortgagee is in precisely the same situation that he would have been in if he had made this inquiry and received the information.   In fact he is in law presumed to have inquired, and obtained this information.   The case is altogether different from one in which a party is visibly in possession of one forty of a section, without legal title, but is rightfully entitled to a conveyance for the whole section, and a person, without actual notice, buys, or takes a mortgage from the holder of the legal title upon a distinct forty of which there is no visible possession.   For the reasons above set forth I concur in the conclusions of the foregoing opinion.

ADAMS, J., *dissenting*.—We have a case where the defendant Daniel O. Connelly borrowed of the plaintiff $4,500 and to secure it executed a mortgage upon a half section of land of which he had the legal title. But the mortgage was held invalid upon the ground that the mortgagor was merely the legal and not the equitable owner. The mortgagor it appears before the execution of the mortgage built a small house somewhere upon the half section and allowed his son, the defendant James O. Connelly, to occupy it. It appears also that this son James remained in his father's family for a few years after he became of age, and worked upon his father's farm, having his support from the income of the farm in the meantime. James' pretense is that when his father built a house on the half section in question and allowed him to occupy it he gave him the half section for his work, and there was some evidence introduced tending to show that such was the fact. The claim of James, if well grounded, convicts his father of a great fraud. He did not execute the mortgage by mistake. He was not a great land owner. He owned one section in a body, embracing the half section in question and must have known perfectly well what James' claims were when he executed the mortgage if those claims had any foundation.

There is much to show that they had no foundation. In the first place the evidence shows that at the time of the alleged settlement between James and his father for James' labor, his father gave him a considerable amount of personal property, and there is good reason to believe that that, together with the use of the house and so much of the half section as James saw fit to cultivate, was a full equivalent for James labor, and that what was said about the giving of the farm was said in view of a mere prospective advancement. Not a word appears to have been said about a deed at any time, though nine years elapsed between the time of the alleged settlement and the execution of the mortgage. Daniel O. Connelly paid the taxes on the land for the most part if

not entirely, cultivated a part of it, and raised money by mortgaging the whole of it two or three times before he executed the mortgage in question. He was engaged in dealing in cattle, was considerably in debt, was not the owner of a large property, and does not appear to have been in circumstances to justify him in making so large an advancement to James. I must be permitted to express great doubt whether the mortgage was not executed in good faith, and without any supposition that James would make any claim to the land as against the mortgagee, and whether the mortgagor's fraud does not consist in now colluding with James to set up this claim.

I prefer, however, to place my dissent mainly upon other ground. If it should be conceded that James had the equitable title he would not be allowed to set it up as against the mortgagees unless the latter had actual notice of it. If they had known that James was living on the half section, knowledge of such fact, it may be conceded, would have been sufficient to put them upon inquiry, and in such case they would be deemed to have had actual knowledge of whatever there was reasonable ground for believing that the inquiry if properly prosecuted would have led to. But they had actual knowledge of nothing. They were not therefore put upon inquiry. The sole question then is as to whether they had constructive notice of anything, and if so what. They had constructive notice of whatever possession James is shown to have had when the mortgage was executed. We reach then the final and decisive question: What possession is James shown to have had when the mortgage was executed? He actually occupied the house, and so much of the ground as he was actually cultivating. But it is not shown precisely where the house was, nor what ground he was cultivating. Unless, then, his possession extended beyond his occupancy he must fail. My associates claim that it did. For the purposes of this opinion it may be conceded that where a person acquires the equitable title to a half section of land and occupies any

part of it, he will be deemed to be in possession of the whole unless some other person is to be deemed in possession of the unoccupied part.

But in the case at bar I think it is to be deemed that Daniel O. Connelly was in possession of the unoccupied part. At the time of the alleged settlement with James his father was in possession of the whole section of which he had the title. The legal title to the section alone would have given him constructive possession, but he lived upon and had his farm upon the section. He had then what is to be deemed the actual possession of the whole. Now that actual possession must I think be deemed to have continued except so far as it was excluded by James' actual occupancy. In *Bradley v. West*, 60 Mo., 40, the court said: "Where the legal owner is in possession of part of the land of which he has the fee, the law invests him with the possession of the whole, and he can only be dispossessed by actual ouster, and a person entering upon the land not having the legal title will be restricted in his possession to the part actually occupied." It may be thought that the case is not applicable to this, because in this case the controversy is not between James and his father, and that his father must be deemed to have put James in possession of the whole. But the fact still remains that so far as anything was actually done, James was not put in possession of more than he actually occupied, and nothing was done to exclude the actual prior possession of the father of the part that was unoccupied.

In my opinion the decree should be reversed.