Coleman John, Appellant, v. Jasper Penegar and Annie Penegar, Appellees.

**Vendor and vendee:** RESERVATION OF LIFE USE: EVIDENCE. In this action to obtain possession of real property, the evidence is reviewed and held to sustain a finding that a purchaser of the land, in having the conveyance taken in the name of another, made an agreement with the grantee that he should have the life use and occupancy of the premises.

**Same:** GOOD FAITH PURCHASER: NOTICE. A purchaser of land who knew that the same was and had been in the possession of another for a long series of years, and that the grantor had never occupied the same, and who was told that he had better consult the occupant of the premises, was put on inquiry as to the rights of the occupant and took the title subject thereto.

*Appeal from Davis District Court.*—Hon. M. A. Roberts, Judge.

Tuesday, February 11, 1913.

Action brought by plaintiff to obtain possession of nine acres of land. The case was commenced before a justice of the peace. Defendants filed an equitable answer, and the cause was transferred to the district court. The cause was then transferred to the equity calendar, and, after a trial to the court, a decree was entered finding that defendant Jasper Penegar was entitled to the use of the land during his life, and that plaintiff was not entitled to the possession. The facts are more fully stated in the opinion. Plaintiff appeals. —*Affirmed.*

*Payne & Goodson,* for appellant.

*W. F. Garrett* and *Ellsworth Rominger,* for appellees.

PRESTON, J.—Many matters were set up in the pleadings by both parties. As to some of these, there is no evidence, and others are not applicable to the case made. The appellant has argued some things which are not pleaded, and which are not now material. His principal contention is that the evidence is not of that clear and satisfactory character required in such cases. We have not been favored with argument by appellee. Briefly stated, the controversy, so far as plaintiff is concerned, is whether he is entitled to the possession of the land, and that is all the relief asked by him. In his reply, he pleads the statute of limitations as to the defendants' claim that the deed hereinafter referred to is a mortgage; he also pleads the statute of frauds. He introduced in evidence a deed from John Penegar to plaintiff, dated September 29, 1909, also a deed from Dexter Richards to John H. Penegar, purporting to bear date January 7, 1889, notices to quit, and the original notice of suit ·before the justice, and rested.

The defendants state their claim in different ways in their pleading, one of which is that the deed heretofore referred to, executed by Richards to John Penegar, was in fact a mortgage, and that he (Jasper) was in fact the owner of said land at the time said deed was executed, and that, at the time said deed was executed, he had an agreement with John ·Penegar, by which the said Jasper was to occupy the land during the life of said Jasper; that he, in writing, directed the grantor, Richards, to name said John Penegar as grantee, and claims that the plaintiff, Coleman John, had notice of his rights and equities before plaintiff obtained his deed from John Penegar, knew that said John Penegar had no right to convey, and had no title that he could convey. Other matters were set up by him; but the evidence was directed mainly to the proposition as to whether defendant had the right to use said land during his life.

The question is then, as we view it, whether defendant Jasper had rights in the premises, and, if so, what they were,

and whether plaintiff had notice thereof before his purchase of the land. The determination of the controversy depended on the evidence, and was almost entirely a question of fact. There was a conflict in the evidence. We shall not attempt to review all of it, but enough to show that the decree has support, and that the findings of the trial court, he having seen and heard the witnesses, should not be interfered with. The court found in the decree: "That the legal title and ownership of the land in controversy was placed in the name of John H. Penegar by a written order of Jasper Penegar in August, 1893, for the purpose of securing said John H. Penegar for the sum of $112.50 paid to Steckel, for Jasper Penegar, by John H. Penegar, to release said premises from a lien of said amount held by said Steckel against said land, and that it was a part of the arrangement, at the time, that Jasper Penegar was to have the right to use and occupy said land as a home, without any interest charges on said sum during his lifetime; and, Jasper Penegar being in possession of the land under said arrangement when John H. Penegar sold same to plaintiff, the court holds that the plaintiff, Coleman John, had constructive notice when he purchased said land of John H. Penegar of the rights of Jasper Penegar, and that although the deed from John H. Penegar to John was one of general warranty, still the said plaintiff was not entitled to the possession of said real estate when this suit was begun." The decree dismissed the plaintiff's petition, and rendered judgment against him for costs.

I.   The plaintiff claims that the deed from Richards to John Penegar was in fact, what it purports to be, an absolute deed, and that said John Penegar was to be the owner. Defendant Jasper is a cripple, illiterate, and not able, without assistance from his relatives and neighbors, to support himself and mother.

1. VENDOR AND
VENDEE: reser-
vation of life
use: evidence.

He was not a great success as a witness. The mother, who at the time of the trial was seventy-seven years of age, had lived with Jasper on this land since 1889. John Penegar

had, from time to time, assisted his brother and mother more or less.

The undisputed evidence shows that in 1889 Jasper made a written contract with one Steckel for the purchase of this land; that a bond for a deed was given; and the plaintiff in this case admits, in his reply, that Jasper Penegar first purchased the land from Amos Steckel, trustee, and that bond for a deed was executed therefor. Richards executed the deed in question January 7, 1889; that the name of the grantee was left blank; that in August, 1893, at the time of the alleged agreement between John and Jasper, said Steckel inserted the name of John Penegar therein; that at the same time there was indorsed, in writing, on the written contract between Steckel and Jasper, the following: ''Please make deed hereunder to John H. Penegar. Jasper Penegar.''

The testimony of Jasper Penegar, taken by itself as to what occurred at the time of the transaction last referred to, is not entirely satisfactory; but, taking all the evidence together, and all the circumstances, we are satisfied, as was the trial court, that there was an agreement between Jasper and his brother that Jasper should have the right to occupy and use it during his life. Jasper so testifies, and he claims that he borrowed the money of John to pay off the amount then due Steckel, which was $112.50. Jasper had, prior to that date, paid at least $98 on the purchase price, and perhaps more. The original purchase price was $150. The brother claims there was no loan, but that he furnished the money to pay off the indebtedness. Jasper testifies, in substance, that the agreement was that he should have the right to use the land without paying any interest; and the brother John admits that he did not expect to charge any interest, and that he did not intend that Jasper or his mother should be removed from the place after the deed to him was made; that he intended and expected them to still live on the place, and that he did permit them to live thereon from 1893 up to the time of the commencement of the suit, which was about seventeen

years. Jasper and his mother had occupied the place about five years prior to 1893; that is, since his contract of 1889. John Penegar also testifies that he expected Jasper to pay the taxes; as to the taxes for seventeen years he answered, ''I supposed him living on there and me giving him the money he would see to that.'' He says that for a part of the time he furnished the money to pay the taxes. This last matter is denied by Jasper.

There was other evidence both ways; but we think we have set out enough to show the general tendency of the evidence. We are satisfied with the finding of the court on this proposition.

II. The next question is as to whether the plaintiff herein, Coleman John, had notice of the rights of Jasper. He testifies that he had lived near this land in question, and knew, of his own knowledge, that Jasper was in possession and living on the place and carrying it on for about eighteen years, and that he did not think John Penegar ever lived on the place.

2. SAME: good faith purchaser: notice.

John Penegar testified that, after he had agreed to sell to plaintiff, but before the deed was executed, he told Jasper and his mother that he had sold the land, and that Jasper got mad and claimed that he (John) did not own it; that the deed was made out after he told plaintiff about this trouble with his brother; and that plaintiff made no objection. He · modified this statement somewhat on his re-examination, and says that all he told plaintiff was that Jasper got mad and went to cursing, and was trying to raise trouble, when he told him he had sold the land. Witness Stufflebean testifies that plaintiff talked to him about buying the land, and that the witness asked plaintiff if the land did not belong to Jasper and his mother, and if he had not better go and see Jasper. If plaintiff had inquired of Jasper, he could have learned what the claim was. There may be other circumstances which we have not noticed bearing on this question; but we think enough was shown here to put plaintiff upon inquiry, and to

give him notice that Jasper had rights in the premises. *Truth Lodge v. Barton,* 119 Iowa, 230; *Allen v. McCalla,* 25 Iowa, 482; *Wilson v. Miller,* 16 Iowa, 111; *Watters v. Connelly,* 59 Iowa, 217; 29 Cyc. 1114.

Enough has been said to show that the decree of the trial court was just and right. It ought to be, and is, *Affirmed.*