E. F. MILLER, Appellee, v. ELECTRIC SERVICE COMPANY, Appellant.

DEEDS: Failure to Record—Subsequent Bona-Fide Purchasers. One who buys telephone poles erected on land and seeks to recover from the grantor the value thereof, on the theory that the grantor's subsequent conveyance of the land carried title to the poles to the grantee of the land, must establish the fact that the grantee of the land bought *without knowledge of the rights of the owner of the poles.*

DEEDS: Failure to Record—When Subsequent Purchaser Charged With Notice. Principle reaffirmed that one who purchases real property is charged with notice of the rights of one in possession. So held

as to electric light poles standing upon the land, in active use by the owner thereof.

*Appeal from Linn District Court.*—JOHN T. MOFFIT, Judge.

JANUARY 10, 1922.

THE plaintiff is the assignee of one Herman Sonken. On January 4, 1917, Sonken, by phone, offered to sell defendant 336 telephone poles owned by Sonken, complete with cross-arms and braces, at $1.00 each. The offer was accepted in writing. The number of poles was ascertained, and after some deductions were agreed to, it was found that the amount of plaintiff's claim was $325. He asks judgment for $325 and interest. The poles were duly delivered to defendant about February 1, 1917, and defendant has kept and used the poles. On February 10, 1919, defendant, in writing, with an excuse for delay in making payment, offered to pay Sonken, or his agent, Farmer, for the poles, and stated that it would send check at an early date. This letter was after Sonken had made conveyances of portions of the right of way upon which other poles were situated, and after such conveyances were recorded. The plaintiff's claim was admitted by the defendant, but it claimed a set-off as follows: That a lot of poles bought by defendant from Sonken, together with the lease, privilege, and right of way, were sold to others, and by said Sonken converted and appropriated to his own use, wherein Sonken, plaintiff's assignor, was guilty of conversion, and the delivery of the poles to defendant was prevented by Sonken, all to defendant's damage in the sum of $500; and that, by reason of these matters, defendant owed Sonken nothing, and owes the plaintiff nothing. Defendant therefore asks that its claim be established, as an offset as against plaintiff's. Plaintiff admitted that Sonken sold to defendant the poles, lease, and privilege to use and take away, as alleged in defendant's counterclaim, and that the poles were paid for, and avers that defendant took possession and strung its electric wires and conducted its electric current thereon. On the trial, defendant conceded the amount of plaintiff's claim, and that plaintiff is the owner of it. For the purpose only of fixing the amount, plaintiff conceded

that, if defendant was entitled to an offset, its claim was equal to the amount of plaintiff's claim. It was also conceded that defendant had the burden of proof, and was entitled to the opening, which it assumed. It was further admitted that Farmer had a power of attorney, and was the duly authorized agent, having power to make deed and to deal for Sonken, plaintiff's assignor. At the close of all the evidence, both defendant and plaintiff moved for a directed verdict. Defendant's motion was overruled, and plaintiff's sustained, and the jury returned a verdict for plaintiff, upon which judgment was entered. Defendant appeals.—*Affirmed.*

*Redmond & Stewart,* for appellant.

*Clifford B. Paul* and *E. A. Johnson,* for appellee.

PRESTON, J.—The controversy is over the poles referred to by defendant in its set-off. There is no controversy as to the poles claimed for by plaintiff, and no claim that they have been

1. DEEDS: failure to record: subsequent bona-fide purchasers.

paid for, except as defendant claims the right to offset. The poles sued for by plaintiff are not the same poles referred to by defendant in its counterclaim or set-off.

On June 30, 1917, Sonken, as owner, by Farmer, his agent, sold to defendant, by a written conveyance, which was recorded, a number of telephone poles, complete, less wire, between the towns of Coggon and Prairieburg. The writing provides that:

"The above poles are sold you including the permission of pole right of way along the present right of way of the Chicago, Anamosa & Northern Railway property between the above points."

These poles were paid for by defendant, and it took possession of them, so far as possession could be taken, and changed the character of the line from a telephone line to an electric line, the telephone wires being removed and high-tension wires being substituted, on which 16,500 volts of electricity were conducted. The instrument just referred to was informal, but no complaint is made of that. It was not recorded in any real estate record, but was recorded in chattel mortgage records, June

27, 1917. It purports to have been executed and acknowledged three days thereafter, June 30, 1917. The acknowledgment is as follows:

"Signed and sworn to before me this 30th day of June, 1917, by Mr. G. E. Farmer, to me personally known."

Following are the signature and seal of the notary. To say the least of it, it is doubtful whether the instrument was acknowledged at all, in such a way as to be entitled to record anywhere. Appellee makes no point as to this. However, he does make the claim that the instrument conveyed real estate, and should have been recorded in real estate records; that it is, in effect, an unrecorded deed. We understand appellant's theory to be that the pole line and privilege constituted an interest in real estate. Mr. Bryan, who is defendant's bookkeeper and manager, testifies that he did not claim that the defendant got anything except the poles, cross-arms, and the pole privileges in the right of way, by its purchase from Sonken. They claim no other right. On December 12, 1916, Sonken purchased the right of way of the Chicago, Anamosa & Northern Railway, and the equipment thereon, from its receiver. A deed was executed to Sonken therefor, which was recorded December 21st. The railroad was junked by Sonken. The rails and timbers had been removed. On the right of way were some ties, right of way fences, poles, and so on. On June 30, 1917, as before stated, defendant purchased the poles and pole privilege on the old right of way between Coggon to Prairieburg, a distance of about six miles. At about the same time, Sonken removed his wire and defendant took possession, and strung its wire on the poles. The title fully passed, and the matter was a closed transaction. The defendant took and exercised its full rights under said purchase, and its possession was as full and complete as the nature of the property would permit. The defendant so used the poles with its service wires thereon, for about nine months. Defendant had its plant at Central City, distant five or six miles, and was lighting the town of Coggon; and, to enable it to light the town of Prairieburg, it purchased the poles referred to in defendant's set-off, with the right to use them and take them away, and to put on them its high-tension wires. The use of the poles for railway telephonic communication had entirely ceased. In the summer or fall

of 1918, a new line was built by defendant on the public highway, paralleling the old right of way, and the wire on the poles in question was removed and placed on the new line, and some of the poles and cross-arms were taken up. Thereafter, the old line on the right of way was abandoned, no attention was paid to it, and it was never used thereafter. Thereafter, Sonken executed deeds to different parties for parts of the right of way, which deeds were introduced in evidence, over proper objection by plaintiff. Two of these deeds were executed April 1, 1918, one to Barker and another to Chismore. These two deeds were given at a time when defendant was in full possession and control, and was using the old line for conducting electric energy. These light wires were different from the wires which had previously been on the poles. On September 2, 1918, which was about the time or soon after defendant had removed its wires, Sonken deeded another portion of the right of way to Barnes, and conveyed the interest of Sonken only. It is doubtful whether the evidence shows that this deed covers any part of the land on which defendant had claim. In the same month, ·Sonken deeded another portion to Ramsey, and this conveys the interest of Sonken only in the personal property, timbers, fences, gates, etc. It appears that at that time there was property on the right of way.

Farmer, Sonken's agent, testifies that, at the time of the Ramsey deed, there were, along the right of way, some ties still in the roadbed, some old bridge lumber, etc. Ramsey then began negotiations with Weeden for a sale of a part of Ramsey's purchase, which consummated in the deed to Weeden, of December 17, 1918. The bargain between Weeden and Ramsey recognized the rights of the defendant company in the poles at least. Weeden testifies that he told them he would give $500 for the right of way, provided the poles were off, and that he would take the poles off for $25; that he did take the poles from the portion of right of way that ran through his farm and placed them alongside the highway in a corner, in a pile; that part of them are still there; that he paid the money for the right of way, and it was the understanding that the poles were to belong to Mr. Cross. Cross is the president of defendant company.

Appellee contends that the bargain between Weeden and

Ramsey is conclusive that they were not innocent purchasers. Richards purchased some of the right of way from Burke. He bought a farm of Burke, and testifies that, when he purchased the farm, he got a deed for the whole business, right of way and all; that, at the time he was negotiating for the farm, there were negotiations about the poles; that, when he bought or contracted for the farm, he had a written contract, and all wire and poles that were on the place were to remain on the place, others to be removed, except crop, stock, and implements; that since the purchase he had removed two of the poles. The evidence as to these negotiations went in over objection by plaintiff. It does not appear from whom Burke derived his title, or that he was claiming through Sonken. Weeden and Chismore were the only two purchasers who were produced by defendant as witnesses at the trial, although it appears that grantees were all from Linn County, except Ramsey, who was from the adjoining county of Jones. In none of the deeds did Sonken expressly reserve or except the poles or the pole privilege that he had previously sold to the defendant; but, as before stated, in some of the deeds Sonken conveyed only his interest. Other grantees had actual knowledge of defendant's rights and recognized them, as before stated; still others had notice that defendant had some rights, from defendant's possession and use of the land. It is not shown by defendant that all such purchasers did not have notice. Concededly, the burden was on the defendant. None of the witnesses, unless it be Chismore, claim that they own the poles or lease privilege adverse to the defendant. As said, Chismore purchased while defendant was in full possession and using the poles with its service wires thereon. None of the witnesses claim that they did not have full knowledge of defendant's purchase, or that they did not have actual knowledge of defendant's conveyance and rights thereunder. Defendant claims that it first had actual knowledge of the conveyances in May, 1919.

From the foregoing it appears that defendant's contention is not borne out by the record, nor is its contention sustained that the poles and pole privilege purchased by defendant from Sonken had been deeded to many persons who claimed superior title to this defendant. There is no conflict in the evidence. The

2. DEEDS: failure to record: when subsequent purchaser charged with notice.

facts are shown almost entirely by defendant's evidence and the deeds. Appellant cites *Burdick v. Seymour*, 39 Iowa 452, *Foley v. McKeegan*, 4 Iowa 1, and *Hilligas v. Kuns*, 86 Neb. 68 (124 N. W. 925, 26 L. R. A. [N. S.] 284, and note), to the proposition that a vendee who fails to record his deed or contract may recover from his vendor who subsequently conveys to a bonafide purchaser. Appellee does not dispute these propositions, but contends that the subsequent purchasers from Sonken were not shown to be bona-fide purchasers. And we have seen that this is the fact. Appellant also contends, and cites authority to the proposition, that possession, to give notice, must be unambiguous, open, visible, and exclusive. The evidence and record which we have before set out show, we think, that defendant did have such possession. It is also contended by appellant that the fact that Sonken's telephone wires were taken off the poles and replaced by defendant's service wires does not constitute a sufficient change of possession to put others upon inquiry. This has been sufficiently referred to by reference to the evidence. On the other hand, the authorities are to the effect that one who purchases real estate while in possession of another, takes it with notice of the existing rights and equities of the person in possession. Without discussing or reviewing the cases, see *Phillips v. Blair*, 38 Iowa 649, 656; *Truth Lodge v. Barton*, 119 Iowa 230. See, also, *John v. Penegar*, 158 Iowa 366, 370. That the possession and use of the pole line and right of way by the defendant was sufficient, under the evidence in this record, to constitute notice sufficient to put subsequent grantees on inquiry, see *Ague v. Seitsinger*, 85 Iowa 305, 311; *Hatton v. Cale*, 152 Iowa 485, 498; *Cook v. Chicago, B. & Q. R. Co.*, 40 Iowa 451; *Buck v. Holt*, 74 Iowa 294.

It is, perhaps, not very material whether the conveyance by Sonken to defendant of the pole line and privilege was an interest in real estate or personal property, under the circumstances of this case. Sonken had divested himself of all interest therein, and he had no title to convey to subsequent grantees; and it seems to us that this is particularly true where defendant has failed to show that subsequent purchasers were without notice. As before pointed out, some of the subsequent purchasers had actual knowledge, and recognized the rights of the de-

fendant. Others had notice by defendant's possession. Under such circumstances, such purchasers acquired no right adverse to the defendant. On this point, see *Fischer v. Johnson,* 106 Iowa 181, 184; *Jones v. Cooley,* 106 Iowa 165; *Wilgus v. Gettings,* 21 Iowa 177; *Fuller v. Harter,* 110 Wis. 80 (84 Am. St. 867, and note).

One or two other matters are argued by appellant; but, in the view we take of the case, they are not controlling, and are covered by what has been said in the points considered.

We are of opinion that defendant has not sustained the burden resting upon it, and has not shown that it was entitled to the offset claimed, and that, therefore, the trial court did not err in sustaining appellee's motion for a directed verdict. The judgment is—*Affirmed.*

STEVENS, C. J., WEAVER and DE GRAFF, JJ., concur.