PATRICK HASSETT, Appellant, v. P. B. FOSTER, Appellee.

**LANDLORD AND TENANT:** Rent—Failure to Take Possession. A party who has contracted to go into possession of premises as a tenant from a named date does not, as a matter of law, take possession *under said lease* by going upon said premises with his stock prior to the commencement of the lease term, in order to enable his stock to consume roughage purchased at execution sale against a former owner; and this is true though the stock remains on the premises after the commencement of the term.

**PROPERTY:** Possession. Principle reaffirmed that one who enters upon land, intending to take possession of the entire tract, no part of which is held adversely at the time of entry, is in possession to the extent of his claim

EVIDENCE: Competency—Testimony as to Intent. A party may be
3   permitted to testify as to the "intent" attending his possession
    of real property.

*Appeal from Crawford District Court.*—E. G. ALBERT, Judge.

## MAY 15, 1923.

ACTION to recover rent. Tried to a jury. Verdict was re-
turned for defendant, and judgment rendered thereon. Facts
appear in the opinion. Plaintiff appeals.—*Affirmed.*

*Sims & Kuehnle,* for appellant.

*P. W. Harding.*and *Andrew Bell,* for appellee.

ARTHUR, J.—I.   On October 22, 1919, plaintiff and defend-
ant entered into a written contract, whereby plaintiff leased to
defendant for the term of one year, beginning March 1, 1920, a
farm situated in Crawford County, Iowa, containing approxi-
mately 300 acres, for the cash rent of $3,500, evidenced by notes
signed by defendant for that amount. Among other things, it
was provided in the lease that, in the event that the second party
thereto, being the defendant herein, vacated said premises before
the expiration of the term of said lease, or failed to keep any
of the covenants of said lease, then and in that event, the unpaid
rent should become due and collectible at once.

.Plaintiff alleged that defendant entered upon the possession
of said premises under said lease, together with his personal
property and cattle and horses, preparatory to the performance
of the terms of said lease; and that defendant abandoned said
premises, and was attempting to remove all his personal prop-
erty therefrom, and refused to perform the covenants of said
lease; and that, by reason thereof, the plaintiff elected to de-
clare the rent of $3,500 due and collectible, and brought this
action for the recovery of .same.

Defendant admitted the execution of the lease and notes
sued on, and denied all other allegations of the petition. Af-
firmatively answering, defendant alleged that the sole considera-
tion of the execution of the lease and notes was that plaintiff

was to surrender possession of the leased premises to defendant
for the purpose of his farming the same during the year 1920,
but that plaintiff never had possession of said premises, and
was unable to give defendant possession of the same, and that,
by reason thereof, there was a total failure of consideration for
said lease and notes.

In reply, plaintiff, in addition to a general denial, averred,
by way of estoppel against the defendant, that from about the
15th day of January, 1920, and continuously thereafter until
on or about the time of the commencement of this suit, on or
about the 24th day of March, 1920, under and by virtue of the
terms of the lease in question, the defendant kept and main-
tained on the premises in controversy about 40 head of cattle
and about 6 or 8 head of horses and upwards of 1,000 bushels
of corn and about 15 tons of hay, and did not attempt to re-
pudiate said lease until long after March 1, 1920, and long after
such possession had been taken by him, and that, by reason
thereof, the defendant was estopped from denying the title of
the plaintiff or repudiating his obligations under said lease.

II.  A narrative from the record will be useful:  Plaintiff,
Hassett, purchased the land described in the lease from O. M.
Foster and W. D. Foster, in May, 1919, by written contract,
wherein the Fosters agreed to surrender possession of the prem-
ises to the plaintiff on March 1, 1920.  In July, 1919, O. M.
and W. D. Foster served notice of rescission of their contract on
Hassett, and tendered back to him the $1,000 down payment
made by Hassett.  In January, 1920, W. D. Foster moved away
from the premises.  O. M. Foster remained on the premises.  In
January, 1920, under an execution against O. M. Foster, there
were sold, of property on the premises, a field of cornstalks, some
corn, and about 15 tons of hay, which defendant, P. B. Foster,
bought; and about the 15th day of January, 1920, he brought
upon the premises some cattle and horses.  On the afternoon of
March 1, 1920, O. M. Foster told defendant that he could not
bring any more of his property on the premises.  After this no-
tice from O. M. Foster, the defendant brought no more of his
property upon the premises, but, about a week thereafter,
brought some farming implements and left them near the prem-
ises with W. W. Johnson, a neighboring farmer.  About the 2d

or 3d of March, defendant notified the plaintiff of O. M. Foster's attitude, and asked for a release from the terms of the lease, which the plaintiff refused to grant. About three weeks thereafter, the defendant leased another farm, and began moving his property from plaintiff's farm, when, on March 24, 1920, this action was commenced. It was tried about a year later. About the middle of March, 1920, after defendant had notified plaintiff that Foster had forbidden him to enter the premises, plaintiff brought an action against O. M. Foster and W. D. Foster, for possession of the premises. The case was not heard until February 2, 1921, during the trial of the instant case, when judgment was entered, finding that Hassett was entitled to possession on March 1, 1920, and a decree awarding him possession thereof, and ousting O. M. Foster and W. D. Foster therefrom.

III. At the close of defendant's evidence (defendant had the burden of proof), plaintiff moved for a directed verdict, and at the close of all the testimony, renewed the motion, which motions were overruled. All of the assignments of error, directly or indirectly, assail the refusal of the court to sustain the motions to direct verdict in favor of the plaintiff, except Assignment No. 6, complaining that the court erred in permitting defendant to testify as to his intention in taking the cattle and horses on the premises in January, 1920, while O. M. Foster was occupying the premises; and Assignment No. 3, relating to the same point, complaining that the court erred in giving to the jury Instruction No. 4, allowing the jury to consider the intention, if any, under which the property of the defendant was placed and kept on the leased premises.

Counsel for plaintiff urge that the motions to direct verdict for plaintiff should have been sustained because the undisputed facts in the case conclusively show that, at the time of the commencement of the term of the lease, March 1, 1920, the premises in controversy were open to occupancy by the defendant, and that he was, in fact, in possession of the premises.

IV. If appellant's contention that, on March 1, 1920, the farm in controversy was open to occupancy by appellee, and that he was, in fact, in possession of the premises, is borne out by the evidence without dispute, it was error to submit the case to the jury, and the motion to direct a verdict in favor of appel-

lant should have been sustained. We cannot agree with appellant that there was no dispute in the evidence on these issues. To determine whether or not it was error to submit the case to the jury necessitates examination of the evidence. O. M. Foster testified that, in May, 1919, he and his brother, W. D. Foster, signed a contract for the sale of the farm in controversy to Hassett, and in July following, they had served notice on Hassett to rescind, and tendered back to Hassett a cash payment made; that he expected to hold the land and litigate the question with Hassett, up to a short time before the trial of the instant case. He said:

"P. B. Foster [defendant] came to me on the 1st of March, 1920, and wanted to know if I would give him possession, and I told him I would not give him possession; that it belonged to me until it was settled for; that I was going to hold possession. He asked me if I wouldn't let him have possession and I said, 'Absolutely, I will not.' I thought he had his neighbors engaged to move him down the next day. I thought, to save him the trouble, that I would go and tell him. I told him he couldn't move on, and that there was no use to come down the next day. I certainly meant it."

He further testified that he heard that defendant had rented the farm at the time the lease was made; that he was on the farm when defendant's 40 head of cattle and 6 or 8 head of horses came to the place; was there when defendant bought the field of cornstalks and some corn and hay on the place; that he "never said a word to defendant until sometime during the first of March, that he couldn't move on there under the lease."

Defendant testified:

"The first time I learned there was any trouble about getting possession of this farm was on the evening of the day of March 1, 1920. I was notified by O. M. Foster that I should not move onto this farm. He is no relation of mine. I informed Mr. Hassett of that fact the next day. Mr. Hassett said to rest easy; that he would get the farm for me all right, and I believed what he said,—felt satisfied he would get the farm. I made different trips down there to get the farm; kept asking him. About the middle of January, 1920, I bought 90 acres of corn in the field, and I bought some 12 or 15 tons of hay and

80 acres of stalks on this land. I bought the stuff on this farm because I figured I was going to move on this farm, and I had quite a bunch of cattle, and I had to have feed for them. I put the cattle on that farm, occupied at the time by O. M. Foster. I told him about buying the stalks, and he did not say anything. I turned my cattle in there. Foster did not make any objections to my turning them in there. I told O. M. Foster at that time that I had rented the farm for the next year. This was in January. He did not say anything to me until the evening of the first day of March. That was the first time I knew there was any objection on the part of O. M. Foster to my moving on the farm. I told Mr. Hassett next day [March 2d] that O. M. Foster refused to let me move on the farm. Hassett said there was no chance for Foster to hold it, and for me to rest easy, and that he would get the farm for me, and I believed him. I made frequent trips to see Hassett, and he insisted all the time that he would get the farm for me. I couldn't understand why, after he had bought the farm, he couldn't get it. I came to the conclusion afterward that he couldn't get it, and I was compelled to rent another farm finally. I knew Hassett was taking steps to get the farm for me. He served notice on this fellow Foster to move, but he did not move, and is there yet, so-far as I know, on the farm. I rented another farm on the 18th of March. I told Mr. Hassett I would have to move somewhere, or have a sale and move to town. After the 1st day of March, I paid $25 to O. M. Foster to leave my stock there and save moving it. He said I would either have to move them off or else pay him; that I couldn't rent it. O. M. Foster told me that I would have to move my stuff; that he had possession of the farm and was going to keep possession of it, and I insisted that I had no place to take them to at that time. He told me that I might leave this stock there if I wanted to pay him for the pasture, so I gave him $25 for the stalks for the month of March. I didn't go to Mr. Hassett and have any conversation with him until after the 1st of March, and then I told Mr. Hassett what O. M. Foster was saying to me, and Mr. Hassett made arrangements to pay the man owning the place upon which I was living $25, so that I would not have to move for a few days. I told Mr. Hassett my landlord, Newcom, was crowding me off, and

he told me he would pay him, rather than have them crowd me off, for a few days, or have any trouble. Mr. Hassett told me that the vacant house there on his place was a dwelling house, and that I could occupy it. O. M. Foster told me that I couldn't move into this other house; that I couldn't come there at all; that I couldn't move anything on the place. He told me that I did not dare move into that dwelling house, and I thought I hadn't better. I told Mr. Hassett what he said, and Mr. Hassett all the time told me that he would get possession for me. Hassett never got Foster off the farm, and he is still there. Fisher moved into this other house, and Fisher and O. M. Foster and Johnson have raised crops on the land there this year. I never opened the door or went into the house, nor did I ever open the barn or put any of my horses in there; never occupied the barn or house. When I told O. M. Foster that I had rented the farm, he didn't say anything. I did not talk to W. D. Foster about it at that time, but I believed that I was going to get the farm. O. M. and W. D. Foster told me one day in Deloit they had sold the farm to Hassett, and were going away. I made no further efforts to move my household goods into the dwelling house on the Hassett farm, any more than we had all of our stuff packed.''

W. D. Foster testified:

''I moved off the land in controversy the 19th day of January, 1920. I claimed to be the owner of this land at that time, and claimed that up to a few days ago. Never gave permission to Mr. Hassett at any time to allow his tenant, Pope Foster [defendant], to go on the land. I never intended to surrender possession of that land to Mr. Hassett or his tenant, after the contract with Mr. Hassett. I turned my interest to my brother, when I moved away. I was unwilling that Mr. Hassett's tenant should go on my place. I heard about the lease between defendant and Mr. Hassett the latter part of October, but never exchanged a word with defendant about it. I knew him very well. I heard about his placing the cattle and stock on the farm in January. He took them onto the north part, and I lived on the south part. The south part is where the vacant house was—the house that I moved out of. That house was vacant on the 1st of March. The part of the farm that he put his stock on was

the north part, the part where my brother, O. M. Foster, lived. I saw defendant after I learned about his leasing the farm, and knew at the time he had made the lease, and during all this time he had made this lease, and assumed that he was planning to get possession on the 1st of March; but I never said a word to him about the matter.''

Patrick Hassett, plaintiff, testified that, after making the lease, in October, he and defendant had no further conversation until the spring, when ''he didn't want to go on the place. He came to me, a little after the 1st of March, and said he couldn't get possession of the farm, and if I would release him, that he would like to get another place. I told him that it was so late that I wouldn't care to do that now. He said: 'I will stay with you until this thing is fixed, and I will let Woolsoncrofft talk to someone else, if you are not satisfied to have me rent his farm.' I knew at the time that he had certain of his property on my farm. He told me about how many horses and cattle he had down there. I talked to him about the dwelling house that was vacant. He talked moving in the south house, and I told him that he could have that house, and move into it; but he said he wouldn't like to move down and then move back, and he thought he would wait, and then he wouldn't have to move twice. He never refused to go on the place. I never gave my consent that he could abandon the place and go elsewhere. He did not tell me that he did not intend to stay on my place.''

On cross-examination, Hassett testified:

''O. M. Foster was in possession of this farm both before and after the 1st of March, 1920, and is still in possession of it. When he [defendant] brought his property on the place [in January], he did not consult me about it. I did not claim possession of these premises one day before March 1, 1920. If P. B. Foster [defendant] had not told me that he could get along all right with O. M. Foster and W. D. Foster, I never would have signed the lease. I thought, when he signed the lease, he could get possession of the premises some time about the 1st of March, 1920; and if I thought he could not have gotten possession of that place, clear of everybody, by March 1, 1920, I never would have taken the lease notes. I tried to get this man, O.

M. Foster, out of possession. I wanted him out; served a notice on March 12th on him to get out, and he is there yet.''

Hassett further testified that Foster came to him, a few days before the 1st of March, and told him that he had to move from the farm he was on; that Newcom (his landlord) wanted him to vacate, and he couldn't do anything with him; that Foster asked him if he could see Newcom and fix it up with Newcom to let him stay there until O. M. Foster got out, so that he would not have to move twice; that he (Hassett) went to see Newcom, and Newcom agreed to let defendant stay a few days, and ''I [Hassett] sent him [Newcom] a check for $25.''

V. It is argued by appellant's counsel that, when the defendant took his cattle and horses upon the leased premises, in January, with the intention of ultimately occupying the entire premises, under his lease, and kept the property there continuously until on and after the commencement of the term of his lease, March 1, 1920, that was, in law, the possession of the entire farm, because, as counsel claim, there was nobody in possession, claiming adversely or offering any objection or resistance; that the only person then occupying any part of the premises was O. M. Foster who had announced his intention of moving off the farm, and had given his consent to the defendant's coming onto the farm with his property, as a tenant, and occupying as such, without objection, until after the term of the lease began; that O. M. Foster was not holding adversely to the defendant when the term of the lease began. We think that such position is not tenable, under the evidence. It may be said from the evidence that, when defendant purchased the stalk field and grain and hay on the premises, and took his cattle and horses there to be fed, he did so in contemplation of moving onto the farm with his family, on March 1, 1920, and taking onto the farm his farm implements and other chattels. However, defendant's occupancy of the premises, by taking his cattle and horses thereon, to be fed on the cornstalks, grain, and hay which he had bought on the premises, for the purpose of feeding, was only such occupancy as if he had purchased a field of cornstalks, grain, and hay from W. W. Johnson (having no lease with Johnson), whose land adjoins the farm he had leased, and placed his stock on

1. LANDLORD AND TENANT: rent: failure to take possession.

Johnson's farm, to feed out the stalks. The fact that defendant placed his stock on the farm to be fed there, in contemplation of moving onto the farm, under his lease, on March 1st, and allowed his stock and some grain to remain upon the premises until after the 1st of March, was not, we think, as a matter of law, taking possession under the lease. Whether the farm in controversy was open to occupancy by the defendant, and whether defendant was, in fact, in possession on March 1, 1920, were questions of fact, for the jury to determine.

There can be no controversy about the law applicable. It is well settled that one who enters on land, intending to take possession of the entire tract, no part of which is held adversely at the time of the entry, is in possession, to the extent of his claim. *Langworthy v. Myers,* 4 Iowa 18; *Nolan v. Grant,* 51 Iowa 519; *Watters v. Connelly,* 59 Iowa 217. But in the case before us, were not the premises held adversely all the time by O. M. Foster and W. D. Foster,—anyway, by O. M. Foster? At least, was that not a question of fact for the jury? We think it was.

2. PROPERTY: possession.

VI. Appellant complains that defendant was permitted, as a witness, to say what his intentions were, with reference to occupying the farm as Hassett's tenant, without getting the consent of O. M. Foster, or whether he intended to occupy the farm as Hassett's tenant when Foster was still on the farm. Defendant's answer was: "I did not figure that I could move there when there was another party living there, demanding me not to." We do not think it was error,—at least, prejudicial error,—to permit the question to be answered, especially in view of the answer, and other testimony in the record.

3. EVIDENCE: competency: testimony as to intent.

VII. We are not triers of the case, and do not assume to determine the ultimate facts. But we do not agree with the claim of appellant that the undisputed facts in the case conclusively show that, at the time of the commencement of the term of the lease, the premises in controversy were open to occupancy by the defendant, and that he was, in fact, in possession, but think, instead, that the evidence fairly shows that O. M. and W. D. Foster (anyway, O. M. Foster) remained in possession, and never did surrender possession of the farm, and continued

in possession until ousted, in February, 1921, in the proceeding instituted by appellant.

We reach the conclusion that the trial court did not err in refusing to direct a verdict for the plaintiff. We find no error in the record. The judgment of the trial court is—*Affirmed.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.