BRENTON BROTHERS, Appellants, v. FRANK BISSELL et al., Appellees.

No. 40151.

NOVEMBER 17, 1931.

REHEARING DENIED MARCH 18, 1932.

C. E. Hunn, H. S. Hunn, and Guy H. Hall, for appellants.

Parrish, Cohen, Guthrie, Watters & Halloran and W. F. Moore, for Frank Bissell, Mrs. Frank Bissell and Frank Bissell, Inc., appellees.

C. C. Putnam and Guy S. Calkins, for Lemuel and Martha N. Wright, appellees.

STEVENS, J.—This is an action in equity to establish a trust in real property, for personal judgment against certain of appellees, and for general equitable relief.

The facts are somewhat complicated, and a preliminary statement thereof is quite necessary to a proper understanding of the issues and the questions which are decisive of the controversy. In the recital of the facts, numerous important dates must be stated. Many material facts are without dispute in the evidence. On March 1st, 1920, James P. Graney and wife made and executed two promissory notes to Leslie R. Wright,—one for $20,000 and one for $13,000. To secure the payment of these obligations, they executed a mortgage upon a 200-acre tract of land in Polk County, subject to a prior mortgage of $20,000 to the Lincoln Joint Stock Land Bank. By the terms of the mortgage, the $13,000 note, which was transferred by endorsement to Frank Bissell, Inc., was given priority over the $20,000 note executed to Wright. On or about March 3, 1920, Wright assigned the $20,000 mortgage, which he retained, to Charles R. Brenton, of Brenton Brothers, who owned and operated a bank at Granger, and also a bank at Woodward, Iowa, as collateral security for indebtedness which he was owing the Granger Bank. The mortgagors defaulted in the payment of interest on the two notes, and in April, 1922, an action was commenced in equity in the district court of Polk County in the name of Leslie R. Wright to foreclose the mortgage. On March 31, 1923, the land was sold at foreclosure sale to said Leslie R. Wright for $37,716.02, the full amount of the judgment. A sheriff's certificate of purchase was issued to Wright. At the expiration of the period of redemption, the certificate was surrendered and a sheriff's deed executed to Wright. On the same day that the sheriff's deed was executed, Wright gave a mortgage upon the same premises for $13,000 to Frank Bissell, Inc.,

subject, of course, to the prior encumbrance to the Joint Stock Land Bank. Upon failure to pay the interest when due, an arrangement was made by which Wright conveyed the premises to Bissell, Incorporated, by quitclaim deed.

Thereafter, and on February 18, 1925, Frank Bissell, Inc., sold and conveyed the said premises to Lemuel and Martha N. Wright for an expressed consideration of "$1 and other good and valuable considerations," subject only to the $20,000 mortgage to the Joint Stock Land Bank. It developed in the testimony upon the trial of this case that Lemuel Wright is in no wise related to Leslie R. Wright mentioned above. As a part of the actual consideration for the purchase of the land, Lemuel Wright conveyed a dwelling house in the city of Des Moines to Bissell, Incorporated.

On April 7, 1925, Leslie R. Wright filed a petition in voluntary bankruptcy, and on June 12, 1926, was discharged as a bankrupt. Leslie R. Wright appears to have been, during all of the time material to this case, indebted to appellants' bank at Granger and also at Woodward.

On October 30, 1924, judgment was entered against Wright on the notes to both banks in the district court of Dallas County. These judgments were subsequently filed and allowed as unsecured claims in the bankruptcy proceedings.

On the 20th day of June, 1927, this action was commenced in equity in the district court of Polk County. The defendants named therein are Frank Bissell, Mrs. Frank Bissell, Frank Bissell, Incorporated, Lemuel and Martha N. Wright. The petition sets up substantially all of the transactions above alluded to, except the Wright bankruptcy proceedings. In addition thereto, it is alleged that the $20,000 note executed on March 1st, 1920, by James P. and Florence Graney and others, which had previously been assigned to Charles R. Brenton for the benefit of Brenton Brothers and as collateral security for indebtedness owing by Wright to the Granger Bank, was delivered to Wright for use in the action to foreclose the same upon an express oral agreement that he, Wright, would purchase the property at sheriff's sale and take title to the land in trust for appellants, and also that the sheriff's certificate of purchase, when received, would be turned over to, and held by, the bank until the sheriff's deed should be executed. Appellant, therefore, al-

leged as a conclusion that Leslie R. Wright held title to the land under the sheriff's deed in trust for them, subject only to the mortgages to the Joint Stock Land Bank and Bissell. Appellants also allege that the conveyance by quitclaim deed of the land to Bissell, Incorporated, and by him in turn to Lemuel and Martha N. Wright, was with full notice and knowledge on the part of all of them of the relationship between Wright and the bank and of its beneficial interest in the property.

Appellants pray: First, that they have judgment against all of the defendants for $13,695.43, the amount of the original indebtedness of Leslie R. Wright to both banks, with interest thereon from July 1st, 1927, and that the same be decreed to be a lien upon the land in controversy; that the equity of redemption of the defendant be barred and foreclosed, and for general equitable relief; second, and as alternative relief, that said judgment be established as a lien upon the real property conveyed by Lemuel and Martha N. Wright to Frank Bissell, Incorporated; and, third, for personal judgment against Frank Bissell, individually, and Frank Bissell, Inc.

The court dismissed plaintiff's petition, and on the cross-petition of Lemuel and Martha N. Wright, quieted title to the 200-acre tract in them against any and all the claims of appellants.

The testimony on behalf of appellants tends to show that the $20,000 mortgage executed to Leslie R. Wright on March 1st, 1920, was, in fact, assigned to Chas. R. Brenton as collateral security for Wright's indebtedness to the Granger Bank, and that when said mortgage was turned over to Wright to be foreclosed it was orally agreed between him and one Burkett, with whom all of the transactions involved herein were had, and who was the cashier of the Granger Bank, that the property should later be bid in by Wright on the foreclosure sale and the title taken in his name in trust for appellants. The assignment of the $20,000 mortgage to Chas. R. Brenton was never recorded. Appellants concede that up to the date on which the quitclaim deed was executed by Leslie R. Wright to Bissell, Incorporated, the $13,000 note had priority over the $20,000 note assigned to Chas. R. Brenton.

On March 8, 1922, which was prior to the commencement of the foreclosure action, Frank Bissell, Inc., and Leslie R.

Wright entered into an agreement in writing, by the terms of which it was agreed that the $13,000 note held by Bissell had priority over the $20,000 note, and that, as the mortgagor was in default, the mortgage should be foreclosed and the land bid in for an amount not less than the $20,000 first mortgage and the $13,000 note held by Bissell, and that when the sheriff's certificate was obtained, it should be placed in some bank agreeable to both parties, in escrow, to be held until a sheriff's deed should be issued. It was further agreed that when the sheriff's deed was received Wright would execute a mortgage for $13,000 to Bissell, Incorporated, subject only to the first mortgage for $20,000.

It is conceded that the sheriff's certificate was delivered to, and held by, appellants' bank at Granger until it was surrendered to Wright for the purpose of obtaining the sheriff's deed.

It is the claim of both Bissell and Leslie R. Wright that the written instrument signed by Wright and Bissell was prepared by one of Brenton Brothers. This is denied by appellants. A lawyer living at Adel testified that he dictated the instrument and that it was turned over to Bissell, who took it to a lawyer in Guthrie Center, who made some changes therein before it was finally signed. Burkett admitted that he received a copy of the agreement as originally written. The brother, who it is claimed dictated the contract, did not remember having done so, and was quite sure that he did not. It is obvious that Burkett knew of the agreement under which the certificate was left at the bank, because he refused to deliver it to Wright until he was authorized by Bissell to do so. The quitclaim deed from Leslie R. Wright and wife to Frank Bissell, Inc., bears date October 25, 1924.

It is conceded by all of the parties thereto that, prior to October 11th, Leslie R. Wright offered to convey the land to appellants upon the surrender to him by them of the notes held by the bank at Granger and also at the Woodward bank. Appellant does not claim that the assignment of the $20,000 mortgage to Chas. R. Brenton was intended as collateral security for Wright's indebtedness to the Woodward bank. Burkett declined to accept the deed upon the terms proposed.

Prior to this time, Wright had defaulted in the payment of the interest upon the $13,000 mortgage held by Bissell, Inc.

Bissell desired to avoid the expense of foreclosing this mortgage, which all parties concede had priority over any claim of appellants'. It was then that Bissell requested the execution of the quitclaim deed already referred to. Wright declined to execute it until he had learned definitely what appellants, to whom he had tendered a conveyance, intended to do.

On October 11th, a letter was prepared by an attorney at the request of Bissell, which Wright signed and Bissell addressed and mailed to Burkett. In this letter, Wright informed Burkett that he was unable to pay his indebtedness to Bissell, and that Bissell had requested a quitclaim deed to the land in satisfaction of the $13,000 mortgage; but that, as he had already proposed to deed the land to appellants, he desired, before doing so, to know whether they would accept the deed tendered to them. In part, this letter is as follows:

"In order to close this matter and also to avoid my being sued on the second mortgage foreclosure, I have promised Mr. Bissell that I would make this quitclaim deed on Friday next, October 17th, either at your direction, or to Mr. Bissell."

Burkett answered this letter two days later, informing Wright that the notes held by the two banks had been turned over to an attorney at Dallas Center, who had taken full charge of all matters pertaining thereto. It is clear, therefore, that the conveyance of the premises in controversy by Leslie R. Wright to Bissell, Incorporated, was with actual knowledge on the part of appellants and without dissent or protest of any kind on their part.

It is, of course, conceded that the final discharge of Leslie R. Wright as a bankrupt destroyed the relation of debtor and creditor between him and the bank of Granger and the bank of Woodward. Appellants, therefore, have, and assert, no claim of any kind against Leslie R. Wright, who is not a party to this proceeding.

As we interpret the pleadings and the argument of counsel for appellants, relief is sought in this action upon the theory that, title having been taken by Wright to the land in controversy, in pursuance of the alleged oral agreement, he held the same in trust for appellants, subject only to prior encumbrances.

It is said by counsel in argument that "Leslie R. Wright

held the title to the land in trust for appellants, subject only to the first mortgage and the second mortgage of $13,000 of the appellee Bissell."

Appellants next contend that Bissell and Lemuel and Martha N. Wright had actual or constructive notice of the foregoing. Whether or not the alleged oral agreement was entered into between Burkett and Wright, we need not determine. Wright is eliminated from the case. Only Bissell individually and Bissell, Incorporated, and his grantees can in any way be affected by a decree in appellants' favor.

Burkett admitted upon the trial that he did not personally inform Bissell of the alleged trust agreement. Wright was uncertain, and, in effect, both admitted and denied the alleged trust. He never informed Bissell that the $20,000 note held by him had been transferred to Chas. R. Brenton and the mortgage assigned to him as collateral security for the bank. Nothing pertaining to this transaction has ever been placed of record. Bissell emphatically denied that he knew, or ever heard of, the claim now asserted by appellants until the present action was commenced and the original notice served upon him.

Instead of tending to charge Bissell with notice, every significant fact, except such admissions as were shown by the testimony of Wright, would seem to negative knowledge on his part. The sheriff's certificate of purchase was delivered to the bank at Granger in pursuance of the written agreement between Wright and Bissell. At least this is true so far as Bissell had to do therewith. The quitclaim deed from Wright to Bissell was executed with full knowledge on the part of Burkett, who was the agent and representative in all of the transactions for appellants. He testified that he did not inform Bissell at that time of the claim now asserted that Wright held title only in trust, for the reason that he knew Bissell already had knowledge thereof. The facts upon which Burkett based this statement are not shown in the abstract. It is inconceivable, under the circumstances, that Bissell would have accepted a quitclaim deed to the land if he knew that his grantor held title thereto in trust only for appellants. Immediately upon receiving the quitclaim deed, Bissell released the $13,000 mortgage of record.

A far more significant fact must now be given its proper emphasis. Wright offered to convey the land to appellants. It

is true that this offer was coupled with the demand that he be released from his indebtedness to both the bank of Granger and the bank of Woodward. Burkett declined to accept the deed. No one could have been in a better position than Burkett, if Wright held the title in trust only for appellants, to dictate the terms upon which a deed should be executed to appellants. Wright held the legal title to the land, but the beneficial interest, upon appellants' theory, belonged absolutely to them. They had a right, legal and equitable, to demand a conveyance from Wright in compliance with the terms upon which he became vested with the legal title. In other words, appellants are in the position, as sole beneficiaries of the trust, of having declined a transfer of the title to them by the trustee, who became such by their own procurement.

The refusal of appellants to accept conveyances from Wright is highly significant as to the existence of, and their attitude towards, the alleged trust. As previously stated, judgments were obtained upon the notes held by the two banks at law in Dallas County, and later filed as claims in the bankruptcy proceedings. In none of these proceedings were the claims now asserted by appellants even suggested.

Appellees, among other defenses, have pleaded in effect a waiver of and estoppel against the assertion of any claim by appellants against either the land in controversy or appellees individually. The plea of estoppel is based in part upon the adjudication and final discharge of Wright in bankruptcy. Whatever the effect may have been upon the alleged trust in the real property of the final discharge of Wright in bankruptcy, the relations of creditor and debtor ceased at that point. Appellants may not now maintain an action against the bankrupt at law or in equity to recover a personal judgment against him. He was not made a party to this action.

Our discussion, thus far, has proceeded upon the assumption that appellants may have had some claim or right in equity in the nature of a trust which was enforceable against Leslie R. Wright. As to whether such right in fact existed, we shall express no opinion. Although appellants allege in their petition that there is due and owing the Bank of Granger and the Farmers Bank of Woodward the total sum of $13,695.43, no such indebtedness in fact exists. The exact basis of appellants' claim

against Bissell, Inc., as we understand the claim now asserted, is that he became vested with the legal title only to the land in controversy, subject to certain encumbrances thereon, and that he must now account to the beneficial owner for the proceeds to the extent of appellants' equitable right in the premises. By the prayer of their petition, appellants seek to have a lien decreed both upon the land conveyed by Bissell and the Des Moines property conveyed to him as part of the purchase price, or in exchange therefor.

What we have said already, sufficiently disposes of appellants' claim that Bissell, Inc., had actual notice of the existence of the alleged trust relationship between appellants and Wright.

But it is further argued by appellants that one who acquires title by quitclaim is not protected against prior bonafide claims, and that he takes with notice thereof. Authorities need not be cited to sustain this contention. It is familiar doctrine. It is equally true that one who receives a mortgage in good faith for a valuable consideration without notice of any infirmities, takes it relieved from all such infirmities. In other words, such a mortgagee is to be regarded as a purchaser without notice of prior or conflicting claims. Hewitt v. Rankin, 41 Iowa 35; Patton v. Eberhart, 52 Iowa 67; Koon v. Tramel, 71 Iowa 132; Young v. Shaner, 73 Iowa 555; Robertson v. U. S. Stock Company, 164 Iowa 230.

Bissell was the holder of a mortgage given to secure a good-faith indebtedness and, therefore, stood in the position of a purchaser for value. The sole and only purpose for the execution of the quitclaim deed was to avoid the delay and expense of foreclosure. It is true that Bissell expressed the opinion to one of appellants' attorneys that he could afford to pay $1000 for a deed which would give him immediate possession of the land, but this is in no wise inconsistent with the action taken by him. As previously stated, appellants, up to this point, have always frankly conceded the priority of appellee's claim.

Whether the acceptance by Bissell of a quitclaim deed to the mortgaged premises from Wright operated to charge him with notice of existing equities and thereby terminate the admitted priority of his mortgage, we shall have no occasion to decide. Whether based upon abandonment, estoppel, or the merits, appellants' petition is without equity. Establishment of

a lien upon any of the real property described in plaintiff's petition or the rendition of a personal judgment against any of appellees, under all of the facts and circumstances shown in evidence, would, within the meaning of that term, as employed in equity, be unconscionable.

The abandonment of any claim which appellants may have ever had by virtue of the assignment of the $20,000 mortgage to Charles R. Brenton, as well as the intention to rely upon the alleged trust agreement, is, it seems to us, fully established by the evidence. The refusal of appellants to accept a quitclaim deed from Wright, which would have transferred both the legal and equitable title to them of the 200-acre tract, subject only to prior encumbrances, can be explained upon no other rational theory. The failure of appellants to at any time assert any right, title, or interest in the land or to take any steps to give notice to others of their alleged interest in the land is a strong circumstance against them. Burkett knew absolutely that Wright was proposing to convey the property by quitclaim to Bissell in satisfaction of his prior mortgage, and remained silent and acquiescent therein. The truth, no doubt, is that appellants knew that the prior encumbrances upon the land exceeded its fair market value and nothing would be gained by taking a conveyance to them, even upon the theory that they already were the owners of the beneficial interest therein. When asked upon cross-examination to give his judgment as to the value of the land, Burkett evaded, and declined to express an opinion. The record contains no other evidence of value than that which may be inferred from the values fixed thereon by the parties for trading purposes. If appellants desired at some time to assert the claims now made, they should, when they had full knowledge of his intention, have advised Bissell of such fact before the land was conveyed to him. His claim was senior and prior to any possible claim they had in the land, and could have been readily enforced and protected by an action in equity to foreclose the mortgage.

What we have said sufficiently disposes of the case as pleaded against Lemuel and Martha N. Wright. The decree in their favor on the cross-petition was right. For the obvious reasons

stated above, the petition of appellants was properly dismissed, and the decree and judgment is affirmed.—Affirmed.

FAVILLE, C. J., and DE GRAFF, ALBERT, and WAGNER, JJ., concur.