**B. L. WILLIS and Chas. E. Hird, Conservators of Property of H. D. Mohr, Appellants,**

v.

**FARMERS STATE BANK OF LAKE VIEW, Iowa, E. P. Kettering, June Janssen, as Trustee, George H. Maas, Sheriff of Sac County, Iowa, and Edna J. Garrison, Appellees.**

**No. 52770.**

Supreme Court of Iowa.

Jan. 9, 1968.

B. L. Willis, Lake City, and Chas. E. Hird, Jefferson, for appellants.

Thomas L. McCullough, Sac City, for appellees.

SNELL, Justice.

This is an action for declaratory judgment attacking an executor's sale and to establish homestead rights.

When parents cooperate or acquiesce in the waste of their substance by a son there is little that courts can do to restore their former status. As the trial court commented the misfortune apparent here resulted solely and only from the conduct and failure of a son.

On October 21, 1966 H. D. Mohr filed in the Sac District Court his voluntary petition for appointment of conservator stating that he was not a mental retardate, a mentally ill person or a minor and had property in the state requiring management attention. This application was several years after he had disposed of his property. On his recommendation plaintiffs herein were appointed and have brought this action in their fiduciary capacity. They make no claim that H. D. Mohr has at any time been mentally incompetent.

The chronology of events discloses the situation.

For many years prior to April 16, 1959 plaintiffs' ward, H. D. Mohr, was the owner of the 280 acre tract of land, part of which is involved herein.

On April 16, 1959 H. D. Mohr and Sophia Mohr, husband and wife, by warranty deed conveyed the land to Arnold Mohr, son of H. D. Mohr. Arnold Mohr testified that it was to refinance the farm.

Nowhere in the deed was there any reservation of any homestead right to plaintiffs' ward, nor a reservation of any other rights. The grantee, Arnold Mohr, assumed the existing mortgages. Shown on the deed were revenue stamps in the amount of $55.00.

Subsequent deeds to the premises were for security purposes and in legal effect mortgages.

On September 3, 1959 Arnold Mohr, single, deeded the land in question to R. S. Dickey. The deed was a warranty deed with $22.00 revenue stamps affixed. Nowhere in the deed was there any mention of any homestead rights or any other rights of H. D. Mohr.

On March 13, 1963 R. S. Dickey and wife deeded the land in question to E. H. Lougee, Incorporated. The deed was a special warranty deed.

On June 24, 1963 there was a corporate deed from E. H. Lougee, Incorporated, to Arnold Mohr, for the land in question and an additional 120 acres. The deed was recorded July 8, 1963.

On June 19, 1963 there was a deed from Arnold Mohr to E. P. Kettering for the land in question and the additional 120 acres. The deed was recorded July 8, 1963. No reservation of any rights of H. D. Mohr was made in this deed.

The claim of the plaintiffs' ward is limited. It is claimed that by oral agreement between Arnold and H. D. Mohr plaintiffs' ward was to live in one of the houses on the 280 acres. The ward and his wife were to have the use of the chicken house and one barn and a space for two bird houses and a garden plot, together with access to the buildings as long as H. D. Mohr and his wife lived.

There is no claim that plaintiffs' ward has any interest in the remaining 280 acres nor any interest in the 120 acres.

Sometime before June 19, 1963 when Arnold Mohr deeded the farms to E. P. Kettering as security, Arnold Mohr and H. D. Mohr had become indebted to the Farmers State Bank at Lake View. Additional funds were loaned to Arnold Mohr in June of 1963. The money was used to complete the purchase of the 120 acres of land.

As security for the loan to purchase the 120 acres of land, and as security for other loans to Arnold Mohr and H. D. Mohr which were in default, Arnold Mohr executed the deeds in favor of E. P. Kettering.

Kettering as an officer of the Farmers State Bank had handled financial transactions for both H. D. Mohr and Arnold Mohr before the deeds in question to E. P. Kettering. Kettering obtained financial statements from both H. D. Mohr and Arnold Mohr. At no time, neither verbally nor in financial statements, did H. D. Mohr ever claim any interest, homestead or other right in the farm land after he had deeded the 280 acres to Arnold Mohr in 1959. The debts to the bank became delinquent and

were in default and on the 28th day of April, 1965 the bank and Kettering commenced an action of foreclosure of the deeds. This action joined Arnold Mohr and H. D. Mohr as parties and notice was served on H. D. Mohr along with Arnold Mohr. Counsel appeared for both Arnold Mohr and H. D. Mohr.

A written stipulation was filed and Arnold Mohr and H. D. Mohr stipulated as to the amount of the indebtedness owing by both parties and authorizing the court to enter judgment against the defendants for the amounts and to enter a decree of foreclosure. Pursuant to this stipulation, judgment was entered against the defendants by order of the Sac County District Court.

On October 30, 1965 final judgment and decree was signed and filed. Execution was issued. Sheriff's notice of sale was given pursuant to statute including notice to Arnold Mohr and H. D. Mohr. There is no attack on the sufficiency of the notices. Neither Arnold Mohr nor H. D. Mohr filed or requested anything. There is no showing that either attended the execution sale.

On March 11, 1966 the real estate was sold at sheriff's sale and was sold to Mr. Kettering and the bank.

On December 2, 1966 Edna Garrison as a junior lienholder on the land in question, redeemed from the foreclosure sale and paid to the Farmers State Bank and Kettering the sum of $38,372.32.

I. There are two houses on the 280 acre farm. In behalf of their ward plaintiffs claim that H. D. Mohr and Mrs. Mohr have the right to occupy one of the houses for life. There is no claim that there is anything of record to support any claim of a homestead. H. D. Mohr has not been the record owner since 1959. There is no claim of any oral claim or notice to anyone.

The claim is based solely on the testimony of Arnold Mohr and H. D. Mohr. Each testified what was agreed between them. H. D. Mohr testified:

"I recall back a number of years ago, about 1959, I and my wife giving a deed to the 280 acre farm to my son Arnold Mohr. I think it was in the spring of the year. I think it was in April. * * * We had a verbal agreement that we can live in there as long as we live. That was I and Mrs. Mohr for the life of both of us, and that would be to live in the house. We could have a little livestock, we could have one barn and the garden and the house yard and access to road. Since that time I have been using that house and those buildings and yard I have referred to and I am still using them at this time."

Arnold Mohr's testimony was essentially the same.

■ The continued occupancy of one of the houses after the deed was not notice of any claim to homestead rights.

In Clark v. Chapman, 213 Iowa 737, 746, 239 N.W. 797, this appears:

" * * * a grantor in a warranty deed who continues to hold possession after the delivery of his deed is presumptively deemed to hold the same in subordination to the deed, and not in hostility thereto. The alleged possession, in order to constitute notice, must be in fact an adverse possession and hostile to the holder of the record title. In the McClenahan Case, 118 Iowa, page 112, 91 N.W. 925, 927, we said:

" 'In such cases a grantor in possession is presumed, in the absence of a contrary showing, to be holding in subordination to the title of his grantee. (Citation) of course, such a grantor may acquire title by adverse possession, even as against his warranty deed; but he must explicitly disclaim holding under his grantee, and openly assert his title in hostility to the title claimed

under his own previous deed. (Citations) But the mere fact that the grantor and his heirs remain in possession, enjoying the property in the same manner as they did before the conveyance was made, does not bind the grantee with notice of an adverse claim. (Citations.) * * *' "

See also McClenahan v. Stevenson, 118 Iowa 106, 91 N.W. 925 and McCormick v. Anderson, 227 Iowa 888, 289 N.W. 440.

In the case before us there was nothing to indicate to a grantee, mortgagee or creditor that H. D. Mohr had any right to a homestead in the premises.

After deeding the premises to his son his continued occupancy of one of the houses on the farm would indicate nothing more than tenancy or sufferance.

There is no merit in plaintiffs' claim that defendants had any notice of any homestead claim H. D. Mohr might have had against Arnold.

Arnold Mohr makes no claim to anything herein. We have no question before us as to any rights between H. D. Mohr and Arnold Mohr, but we note from the abstract of title a judgment in favor of H. D. Mohr and against Arnold Mohr, et al. in an amount in excess of $106,000. This judgment was entered February 16, 1967 and subsequent to all other proceedings mentioned, supra.

II. Plaintiffs attack the method of the sale on execution. The sheriff testified that after levy and notice and pursuant thereto he held the sale at the west door of the courthouse. He said:

"When I offered this for sale I made one offer to sell the whole 400 acres, one piece, at one time, and that was the only offer I made. E. P. Kettering, representing Farmers State Bank was there. There were other people present but no other bidders. E. P. Kettering was the only one that made a bid. The only bid I received was just

this one bid. This bid was made by Farmers State Bank of Lake View and E. P. Kettering and their bid for the whole of the 400 acres was $36,564.60. As a result of the bid money came into my hands for the Sheriff's cost and the Court costs. He receipted for the balance. The bid was the full amount of the judgment plus all costs, so when I was through, then the judgment was marked satisfied in full."

He also testified:

"I published notice of the sale of the farm land in the paper as required by law and in addition to that I served notice on H. D. Mohr and Arnold Mohr of the facts of the sale. Not at any time prior to the sale of the farm land did I have any objections by H. D. Mohr to the manner in which I sold the land. I did not at any time prior to 9:00 A.M. of the day of the sale receive in writing from either H. D. Mohr or Arnold Mohr a request that I sell the land any differently than in which I did sell it."

Section 626.84, Code of Iowa, provides:

"Plan of division of land. At any time before nine o'clock a. m. of the day of the sale, the debtor may deliver to the officer a plan of division of the land levied on, subscribed by him, and in that case the officer shall sell, according to said plan, so much of the land as may be necessary to satisfy the debt and costs, and no more. If no such plan is furnished, the officer may sell without any division."

■ There was no request for sale or offering for sale of the land in any manner other than en masse. Under the statute the sheriff was authorized to proceed as he did. The debtors having remained silent objections now will not lie.

III. Section 626.81, Code of Iowa, provides that when there are no bidders, or when the amount offered is "grossly inadequate" the officer may postpone the sale for a time limited by the statute. It is well settled that a sale for a "grossly inadequate" price may be attacked. It is the purpose of the law on execution sales that no more be sold than necessary. That is why the statute gives the debtor the right to submit a plan of division.

Plaintiffs argue that the sheriff in the case at bar sold the land en masse for an inadequate price.

■ Assuming, arguendo, but not deciding, that plaintiffs have standing to raise the issue, they are without factual support in the record.

Plaintiffs offered testimony as to the value of the land. The highest estimate was $179,000. The lowest was $162,000. There was a first mortgage on the land of about $95,000. The land was sold subject thereto for $36,564. A judgment creditor with a claim of about $59,000 now holds the certificate of purchase through redemption. It thus appears that the land has now brought about $190,000. The abstracts also show over $50,000 in unsatisfied judgments held by other creditors.

IV. As held by the trial court, "The tragic circumstances in the case result not from any action or failure on the part of judgment creditors or the sheriff or court officers, but solely and only from the conduct and the failure of the plaintiffs' ward's son after the ward had given him the farm in question."

Plaintiffs' ward gave away his property. He did nothing whatsoever to protect himself. His son spent far more than his assets would support.

The trial court was right.

The case is

Affirmed.

All Justices concur.