Jessie O. RAUB, Appellee,

v.

GENERAL INCOME SPONSORS OF IOWA,
INC., Defendant,

and

First National Bank, Fort Dodge, Iowa,
Defendant-Appellant.

MANSON STATE BANK, Appellant,

v.

GENERAL INCOME SPONSORS OF IOWA,
INC., and First National Bank, Fort
Dodge, Iowa, Defendants,

and

Jessie O. Raub, Defendant-Appellee.

No. 53841.

Supreme Court of Iowa.

April 7, 1970.

Mitchell, Mitchell, Murray & Goode, Fort Dodge, for appellant First National Bank.

Charles F. O'Connor, Manson, for appellant Manson State Bank.

Arthur H. Johnson, Fort Dodge, for appellee.

LeGRAND, Justice.

This de novo appeal of two consolidated cases involves an attempt by Jessie O. Raub to set aside a deed to her homestead allegedly obtained from her by fraud and to declare invalid two mortgages which the grantee of that deed later placed on the property. The trial court entered a decree declaring the deed void and providing that neither mortgage was a lien on her property.

This appeal is by First National Bank of Fort Dodge, Iowa, holder of the first mortgage, and by Manson State Bank of Manson, Iowa, holder of the second mortgage. General Income Sponsors of Iowa, Inc., the grantee in the controversial deed, does not appeal.

Although Manson State Bank is named as plaintiff in one of the consolidated cases, we refer herein to Jessie O. Raub as sole plaintiff and to both banks as defendants.

■ As already mentioned, General Income Sponsors of Iowa, Inc. does not appeal. The decree holding that its warranty deed was obtained from plaintiff by fraud is therefore a finality. Indeed the evidence is overwhelming that plaintiff was the unfortunate victim of gross fraud practiced upon her by Clark Barczewski and Joseph Huffman, officers and agents of General Income Sponsors of Iowa, Inc., over a period of more than three years during which they bilked her of some $33,000.-00 for which she now has nothing. These unscrupulous men, having once ingratiated themselves with plaintiff, did not rest until they had taken virtually all she had saved. She testified she is now "financially drained."

Plaintiff was employed at Geo. A. Hormel & Co. for a number of years. She had only a ninth grade education but was not without some experience in business affairs. She had bought and sold several pieces of real estate. She knew what a warranty deed was and understood the legal effect of such an instrument. She was hard-working and frugal and had accumulated substantial savings and investments when she first met Barczewski and Huffman in 1963. She also owned her own home, upon which there was then a small mortgage.

She sought these men out to help her sell stock she owned in Allied Fund of New York. Her dealings thereafter were principally with Mr. Barczewski although she also had some contact with Mr. Huffman. Upon Barczewski's advice she sold her Allied Fund holdings and invested the proceeds in two other corporations suggested by him. For some time she received small dividends from at least one of these corporations.

Plaintiff was interested in providing for her eventual retirement. She was then 58 years old and expected to work only a few more years. She talked with Barczewski about her plans, and he advised her concerning what course her investments should take. Within a short time he had her complete trust and confidence. She formed a close personal association with him and his wife. They visited back and forth. She made a will naming him as her executor. Little by little he prevailed upon her to place all her money in stock of General Income Sponsors of Iowa, Inc., about which she knew nothing. He told her this was a company he and Mr. Huffman were starting and she should "get it all in General Income Sponsors." By a series of transactions from February to October (1965) she gave Barczewski $10,000.00 for stock in that corporation. On December 2, 1965, plaintiff executed and delivered to General Income Sponsors of Iowa, Inc. a warranty deed to her homestead, which by then had been cleared of its existing mortgage, in return for which she was to receive an additional $14,000.00

in company stock. Although she asked for the stock certificate several times, apparently she never received it. The warranty deed was recorded December 20, 1965. Thereafter plaintiff remained in possession of the real estate as a tenant, paying $70.00 a month rent from December, 1965, through August, 1966. The rent was paid to Mr. Barczewski on behalf of General Income Sponsors of Iowa, Inc.

On September 17, 1966, the defendant, First National Bank of Fort Dodge, took a mortgage on this property from General Income Sponsors in the amount of $6000.-00. The mortgage was promptly recorded. On October 25, 1966, the Manson State Bank placed a second mortgage on the real estate to secure payment of $10,350.00. This mortgage was recorded on November 7, 1966.

During all this time plaintiff still reposed great trust and confidence in Mr. Barczewski. Although she was being systematically swindled, she did not suspect this until early in 1967 when an officer of the First National Bank called to tell her future rent payments should be made there. She then consulted her attorney and investigation quickly disclosed the perfidy which had been practiced upon her.

As we understand defendants' argument, they concede plaintiff's warranty deed of December 2, 1965, was obtained by fraud and was properly set aside by the trial court. However, they assert they are nevertheless entitled to enforce the liens of their mortgages because they qualify as bona fide purchasers.

I. A bona fide purchaser is one who takes a conveyance of real estate in good faith from the holder of legal title, paying a valuable consideration for it without notice of outstanding equities. Bell v. Pierschbacher, 245 Iowa 436, 449, 62 N.W. 2d 784, 792 and citations; Kindred v. Crosby, 251 Iowa 198, 201, 100 N.W.2d 20, 22; 92 C.J.S. Vendor and Purchaser section 321, page 214.

In the Pierschbacher case we said such a purchaser takes title divested of such equities and that the rules for determining bona fide purchasers are the same as for establishing what purchasers are entitled to protection under our recording act, section 558.41, Code of Iowa.

We have held a mortgagee is regarded the same as a purchaser for this purpose. Brunsdon v. Brunsdon, 199 Iowa 1099, 1112, 200 N.W. 823, 829; Brenton Bros. v. Bissell, 214 Iowa 175, 183, 239 N.W. 14, 18; 36 Am.Jur., Mortgages, section 205, page 794; 59 C.J.S. Mortgages sections 232, 233, pages 302, 303.

II. In considering the status of defendants, no serious dispute exists except as to good faith and notice of outstanding equities. The evidence clearly establishes both mortgages were taken from the legal title holder, General Income Sponsors of Iowa, Inc., and each defendant paid valuable consideration for its mortgage.

The critical question is: did defendants have notice, either actual or constructive, that their mortgagor's title had been obtained by fraud? The trial court found, and we agree, that the defendant banks, as well as plaintiff, were the victims of Barczewski's fraud. However, this does not answer the question. There may still be notice to defendants if circumstances are shown which would lead a reasonably prudent person to investigate the possible existence of outstanding rights hostile to the grantor's title. If such circumstances do exist, and if such investigation is not made, then one who claims to be a bona fide purchaser is nevertheless charged with all knowledge which that investigation would probably have disclosed. Clark v. Chapman, 213 Iowa 737, 744, 239 N.W. 797, 801; Hayne v. Cook, 252 Iowa 1012, 1029, 109 N.W.2d 188, 197; 55 Am.Jur., Vendor and Purchaser, section 697, page 1075; 92 C.J.S. Vendor and Purchaser section 326, page 231.

A consideration of this problem requires us to determine, first, if plaintiff's possession of the property after she had conveyed it away imparted notice of her present claim; and, second, apart from that, were there any other circumstances which should have put a reasonably prudent person on notice to investigate concerning outstanding equities. We discuss these in reverse order.

III. One who asserts he is a bona fide purchaser must prove his good faith; and good faith is lacking if he knew or, as a reasonably prudent person, should have known others made claims hostile to his grantor's title.

In 55 Am.Jur., Vendor and Purchaser, section 697, page 1075, we find this:

"It is a well settled general rule, in determining whether a purchaser had notice of outstanding equities or unrecorded interests so as to preclude him from being entitled to protection as a bona fide purchaser, that if he has knowledge of circumstances which, in the exercise of common reason and prudence, ought to put a man upon particular inquiry, he will be presumed to have made inquiry, and will be charged with notice of every fact which such suggested investigation would in all probability have disclosed had it been properly pursued. The purchaser may not act in contravention to the dictates of reasonable prudence, or refuse to inquire when the propriety of the inquiry is naturally suggested by circumstances known to him."

A similar statement is made in 92 C.J.S. Vendor and Purchaser section 326, page 231.

We have many times held litigants to this same standard of conduct. John v. Penegar, 158 Iowa 366, 370, 139 N.W. 915, 917; Johnson v. Chicago, B. & Q. Railway Co., 202 Iowa 1282, 1288, 211 N.W. 842, 846; Norwood v. Parker, 208 Iowa 62, 67, 224 N.W. 831, 833; Clark v. Chapman, 213 Iowa 737, 744, 745, 239 N.W. 797, 801; Young v. Hamilton, 213 Iowa 1163, 1173, 240 N.W. 705, 710; Randell v. Fellers, 218 Iowa 1005, 1008, 252 N.W. 787, 790; Rance v. Gaddis, 226 Iowa 531, 544, 284 N.W. 468, 475; Hayne v. Cook, 252 Iowa 1012, 1030, 109 N.W.2d 188, 197.

In Johnson v. Chicago, Burlington and Quincy Railway Company, supra, at page 1288 of 202 Iowa Reports, at page 846 of 211 N.W., we said, "It is a well-established principle that notice is either knowledge or having means of knowledge, although such means may not be used. One who purchases land with knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of rights claimed adversely by another, is chargeable with the actual notice he would have received."

Although the trial court found the defendants, too, had been victimized by the fraud of Barczewski and Huffman, it also found the defendants should have known of the fraud by which plaintiff had been induced to transfer her property to General Income Sponsors.

We have searched the record carefully and can find no evidence to charge defendants with such knowledge or to put them on notice to make inquiry.

There was nothing about the mortgage transactions to arouse defendants' suspicions as to the conditions under which the mortgagor's title had been obtained. They were dealing with the holder of legal title, whose deed had been recorded. The record showed payment of adequate consideration. Plaintiff herself testifies she had been paid $14,000.00 for property reasonably worth $12,500.00. True it *now* appears payment was made in worthless stock, but there was nothing *then* to cause defendants to suspect this. Nor can it be said that an owner's application to borrow money on the security of his property is a suspicious circumstance.

It is true when Manson State Bank took its mortgage it then knew it had been

deceived as to the prior dealings between the corporation and First National Bank on loan transactions. But that affects only the rights of the two banks, about which there is no dispute.

We are here concerned with circumstances which would impute to defendants "knowledge of such facts as would put a reasonably prudent man upon inquiry" to determine if the title of General Income Sponsors of Iowa, Inc. had been obtained by fraud.

There is no such evidence in this record.

IV. Even if this is true, however, plaintiff asserts that, since she was the occupant of the real estate at the time of the mortgages, the banks were obliged to investigate her occupancy. Having failed to do so, she argues, they are now charged with notice that the deed to her property had been obtained by fraud.

To put it another way: Did the plaintiff's possession of the real estate in question after the execution and delivery of the warranty deed in question impart notice to defendants of her present claim?

■ Although the question there involved was different, Bartels v. Hennessey Bros., Inc., Iowa, 164 N.W.2d 87, has something to say on this subject. At page 94, we said, "Absent express notice given, a land purchaser generally has three established sources of information to which he should turn for ascertainment of existing rights in any property he proposes to buy: (1) the records in the county recorder's office where basic rights involved are recorded; (2) other public records, to discover existence of rights not always disclosed in the county recorder's office, i. e., judgments, liens and taxes; and (3) an inspection of the land itself, to determine by observation any rights which may exist apart from our recording system by virtue of occupancy, use or otherwise."

It is apparent only the third item of this list is material here, and we now direct our attention to deciding if, under the circumstances of this case, the defendants had notice of plaintiff's claim because of her occupancy of the property.

■ We follow the rule that possession of land by one other than the grantor is ordinarily sufficient to put parties on inquiry as to the rights of the party in possession. Clark v. Chapman, 213 Iowa 737, 744, 239 N.W. 797, 802; Davis v. Wilson, 237 Iowa 494, 505, 21 N.W.2d 553, 560; 55 Am.Jur., Vendor and Purchaser, sections 712–716, pages 1087–1090; 92 C.J.S. Vendor and Purchaser section 349, page 282.

■ ■ However, there is a general exception to this rule which we also observe: possession by the grantor of a recorded deed does not impart such notice. This is because occupancy, to impart notice, must be hostile to or inconsistent with that of the holder of legal title. See Booth v. Cady, 219 Iowa 439, 443, 257 N.W. 802, 804. We have held the occupancy by one who has conveyed his title, at least for a reasonable period, is not inconsistent with the rights of the person to whom he has conveyed. Koon v. Tramel, 71 Iowa 132, 136, 32 N.W. 243, 245; Sprague v. White, 73 Iowa 670, 673, 35 N.W. 751, 753; Dodge v. Davis, 85 Iowa 77, 81, 52 N.W. 2, 3; Trulin v. Plested, 178 Iowa 220, 223, 159 N.W. 633, 634; Tutt v. Smith, 201 Iowa 107, 113, 204 N.W. 294, 297, 48 A.L.R. 394; Clark v. Chapman, 213 Iowa 737, 746, 239 N.W. 797, 802; Davis v. Wilson, supra, 237 Iowa at page 505, 21 N.W.2d at page 560; Willis v. Farmers Bank, Iowa, 155 N.W.2d 407, 410. See also 55 Am.Jur., Vendor and Purchaser, sections 722–727, pages 1095–1098; 92 C.J.S. Vendor and Purchaser section 349(b), page 282. See also Annotation, 105 A.L.R. 845.

■ We are forced to the conclusion that plaintiff's possession of the property following her warranty deed did not impart notice to defendants that she claimed any right or interest therein.

V. Perhaps we could stop our discussion here, but we desire to comment briefly to

show it would be of no benefit to plaintiff even if we had held defendants were obligated to investigate her occupancy of the premises.

Defendants would then be bound only by such knowledge as that investigation would probably have disclosed. Clark v. Chapman, 213 Iowa 737, 744, 239 N.W. 797, 801; Young v. Hamilton, 213 Iowa 1163, 1173, 240 N.W. 705, 710; Rance v. Gaddis, 226 Iowa 531, 545, 284 N.W. 468, 475; Hayne v. Cook, 252 Iowa 1012, 1029, 109 N.W.2d 188, 197, 55 Am.Jur., Vendor and Purchaser, section 698, page 1077; 92 C.J.S. Vendor and Purchaser section 326(d) (3), page 236.

Investigation by defendants would have disclosed nothing to indicate the fraud upon which plaintiff now relies. Her testimony shows she intended to convey her entire interest in the home by the warranty deed of December 2, 1965. At the time the mortgages were given plaintiff was paying rent as a tenant and made no claim to the property. She did not then know the deed had been obtained from her by fraud. She was still completely convinced of Barczewski's loyalty, so much so that she had named him as her executor shortly before that time. She testified she trusted both men "beyond September or October of 1966."

If an investigation had been made, it would have disclosed simply that plaintiff had conveyed her property by warranty deed to General Income Sponsors of Iowa, Inc.; that she continued to occupy the property as a tenant; that she was paying $70.00 a month rent; and that she claimed no ownership interest in the property.

VI. After the trial of these two cases, the court entered judgment setting aside the warranty deed from plaintiff to General Income Sponsors of Iowa, Inc., covering the following described real estate:

The West half (W½) of Lot number Seventeen (17) and Eighteen (18) of Fritz's Sub-Division of Block One Hundred Thirty-nine (139) in Town Company's Addition to Fort Dodge, Iowa.

We affirm this judgment.

The trial court also entered judgment in favor of Manson State Bank against General Income Sponsors of Iowa, Inc. in the amount of $10,350.00, plus interest and costs. We also affirm this judgment.

The court further found that the mortgage to First National Bank of Fort Dodge, dated September 17, 1966 and recorded in Book 202 of Mortgage Records of Webster County, Iowa, page 433 to secure payment of the sum of $6000.00 was void and should be stricken from the records. We reverse that portion of the judgment and hold this mortgage is a valid and enforceable lien on plaintiff's property.

The trial court also found that the mortgage given by General Income Sponsors of Iowa, Inc. on October 25, 1966, to Manson State Bank covering the above described property to secure payment of the sum of $10,000.00, which mortgage was filed of record in the Recorder's office of Webster County, Iowa on November 7, 1966, in Book 203 of Land Mortgages on Page 477, was void and should be stricken from the records. We reverse that portion of the judgment and hold the mortgage held by the defendant, Manson State Bank, is a valid and enforceable lien on plaintiff's property, subject to the prior lien of First National Bank of Fort Dodge, Iowa.

We fully recognize plaintiff has lost her life savings through fraud of Barczewski and Huffman. We futher recognize she is probably without redress against them. The corporation is now apparently defunct. Huffman has plead guilty to a charge of obtaining money under false pretenses. Barczewski has been indicted on a similar charge. At the time this case was tried, he had not been apprehended to stand trial.

These are tragic circumstances brought about by the trust and confidence which plaintiff mistakenly reposed in Barczewski

and Huffman. We agree with the trial court that this was an outrageous scheme unscrupulously carried out until plaintiff was completely impoverished. While we would like to rescue her from the consequences of her own folly, we cannot do so by improperly shifting the loss to defendants simply because they are better able to stand it.

The decree of the trial court is accordingly affirmed in part and reversed in part.

Affirmed in part and reversed in part.

All Justices concur except MASON, J., who dissents, and UHLENHOPP, J., who takes no part.