NATIONAL TRAVELERS LIFE
COMPANY, Appellee,

v.

Theodore E. DYER, Ellen J. Dyer, Norwest Bank, Iowa, N.A., Arrow Signs, Inc., Joura Oil Co., Gardner Signs, Inc., Michael A. Macri, Mildred I. Macri, Michael A. Macri, Jr., and Audrey J. Macri, Defendants,

and

Des Moines Area Community
College, Appellant.

No. 93–0068.

Court of Appeals of Iowa.

March 24, 1994.

Mark D. Walz, Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., Des Moines, for appellant.

William P. Hoye, Belin Harris Lamson McCormick, P.C., Des Moines, for appellee.

Heard by OXBERGER, C.J., HABHAB, J., and KEEFE, Senior Judge *, but decided by DONIELSON, C.J., and HAYDEN, SACKETT, HABHAB, CADY, and HUITINK, JJ.

* Senior judge from the 1st Judicial District serving on this court by order of the Iowa Supreme Court.

HABHAB, Judge.

The defendant, Des Moines Area Community College (DMACC), appeals from a judgment of the district court granting summary judgment in favor of plaintiff, National Travelers Life Company. DMACC argues the district court erred when it concluded that DMACC's lien, which was taken pursuant to a job-training agreement based on Iowa Code chapter 280B,[1] was inferior and subordinate to the mortgage held by National Travelers.

## I.

Theodore and Ellen Dyer at one time owned the real estate involved in this dispute at 1800 Hull Avenue in Des Moines. On October 27, 1987, the Dyers mortgaged their property to Rothchild Financial Corporation, which immediately assigned its mortgage to National Travelers. The mortgage and assignment were properly recorded that same day. The mortgage secures an indebtedness of $715,727.14. The Dyers deeded their property to the defendant, Arrow Signs, Inc., on December 26, 1989, some twenty-six months after the Rothchild mortgage.

Arrow defaulted on the mortgage payments. On August 6, 1991, National Travelers initiated an action against Arrow to foreclose its mortgage lien on property located at 1800 Hull Avenue. The petition named as defendants all parties who had or claimed a recorded legal or ownership interest in the subject real estate.

Arrow filed a chapter 7 petition for bankruptcy. An automatic stay of all state court proceedings against Arrow was entered. National Travelers then filed a motion for relief from the automatic stay, which was granted on February 6, 1992. That same day, National Travelers was advised by counsel for DMACC that DMACC was a party to an Iowa Industrial New Jobs Training Agreement[2] with Arrow. The agreement was entered into on December 10, 1985.[3] The agreement executed by Arrow granted DMACC a lien on all of Arrow's business property pursuant to Iowa Code section 280B.3(5) and section 3.4 of the Job Training Agreement. Therefore DMACC claimed that pursuant to Iowa Code section 280B.3, it had a lien superior to the mortgage lien of National Travelers.

At the time Arrow and DMACC entered into the job-training agreement, the pertinent part of Iowa Code section 280B.3 (1985) provided:

An area school[4] may enter into an agreement[5] to establish a project[6]. If an agreement is entered into, the area school and the employer shall notify the department of revenue and finance as soon as possible. An agreement may provide, but is not limited to:

\*　　\*　　\*　　\*　　\*　　\*

1. Iowa Code chapter 280B has been renumbered and may now be found at chapter 260E.

2. The Iowa Industrial New Jobs Training Act was enacted by the Iowa Legislature and codified at Iowa Code 280B in 1983. Under chapter 280B, community colleges, such as DMACC, can establish programs to assist an employer in providing job training for its employees. DMACC began providing new jobs training for employers within its district in approximately 1985. In the ordinary course, DMACC expects that program costs will be repaid by the new jobs credit from the withholding of the wages of the employees trained in the program. Pursuant to Iowa Code section 280B.5, one and one-half percent of the wages paid to employees who are under the job-training agreement are paid by the employer participant to DMACC. The employer receives credit against its employment tax obligations to the Iowa Department of Revenue for the amounts paid to DMACC.

The funds received by DMACC from the employer are deposited to a special fund which is earmarked to retire the job-training certificates which are issued to fund the program costs. While Arrow was operating and employing the trained employees, a flow of tax credits was generated. That cash flow ended with the liquidation of Arrow.

3. DMACC in urging its priority claims also relies on a later addendum to its December 10, 1985 agreement.

4. Area school means a vocational school or a community college established under chapter 280A.

5. Agreement is the agreement between an employer and an area school concerning a project.

6. Project means a training arrangement which is the subject of an agreement entered into between the area school and an employer to provide program services.

5. Any payments required to be made by an employer are a lien upon the employer's business property until paid and have equal precedent with ordinary taxes and shall not be divested by a judicial sale.

DMACC claims its job-training lien against Arrow's property is an automatic lien and has equal precedence with ordinary property tax liens. It argues that since ordinary tax liens do not have to be perfected with the county recorder, its lien against Arrow's property was perfected like any other tax lien when copies of the job-training resolution, as required by statute, were mailed to the county auditor. DMACC also claims that since its lien has equal precedence to ordinary tax liens, its lien is superior to National Travelers' mortgage even though National Travelers' mortgage was perfected prior to the date Arrow took title to the disputed property.

National Travelers subsequently amended its petition for foreclosure, naming DMACC as a defendant, and filed a motion for summary judgment. Thereafter, the district court ruled that DMACC's lien was inferior to National Travelers' recorded and perfected lien. DMACC's subsequent rule 179(b) motion was denied by the district court. DMACC appeals. We affirm.

## II.

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Iowa R.Civ.P. 237(c); *see Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422, 423 (Iowa 1988). Both parties agree there are no genuine issues of material fact in dispute and the only issues are questions of law. We therefore examine whether the trial court correctly applied the law. Iowa R.App.P. 4.

## III.

As previously noted, the material facts are not in dispute. The Dyers, the titleholders to the land in question, mortgaged the land to Rothchild to secure a loan of some $700,-000. On October 27, 1987, this mortgage was properly recorded, and Rothchild assigned it to National Travelers.

■ DMACC argues rather strenuously that it has an automatic lien by virtue of Iowa Code section 280B.3, but if that lien had to be perfected, it has taken all steps necessary to perfect a lien under Iowa Code section 280B.3(5) and the pertinent rules of the Iowa Administrative Code. In this respect, Iowa Administrative Code 261–5.5 requires that the resolution of DMACC approving a job-training agreement be forwarded both to the Iowa Department of Economic Development and to the relevant county auditor. Also, Iowa Code section 280B.3 and Iowa Administrative Code 261–5.4(1) and 261–5.4(3) require notification of the Iowa Department of Revenue and Finance of its intent to enter into a job-training agreement. DMACC complied with these sections.[7]

National Travelers does not argue DMACC failed to comply with the requirements of chapter 280B and the applicable provisions of the Iowa Administrative Code. It argues DMACC's lien was not and could not be perfected until it complied with Iowa Code section 558.41.[8] That section at the time of foreclosure provided:

No instrument affecting real estate is of any validity against subsequent purchasers for a valuable consideration, without notice, unless filed in the office of the record-

---

7. In addition to the mailings, the notice of intention to issue job-training certificates was published in the Des Moines Register to satisfy Iowa Administrative Code 261–5.7(1).

8. DMACC further contends that National Travelers could have searched the records of the "Polk County Auditor, the Iowa Department of Economic Development *or* the Iowa Department of Revenue and Finance to learn of Arrow Signs' participation as an employer in a job-training program. Alternatively, it could have asked DMACC whether Arrow was a participating em-

ployer in a job-training program." But even if the search had been made by either Rothchild Financial Corporation or National Travelers, the search would have been made insofar as the Dyers are concerned, for on the pertinent dates they were the title holders to the property. Arrow did not take title until December 26, 1989. This was a date even after the September 21, 1987, and November 11, 1987, addendums to the December 10, 1985, Industrial New Jobs Training Agreement.

er of the county in which the same lies, as hereinafter provided.

Iowa Code § 558.41 (1991).

We agree with the trial court that Iowa Code chapter 280B does not automatically create a lien that is superior to National Travelers' prior recorded lien. Section 280B.3 merely permits DMACC to enter into a job-training agreement with Arrow. Under section 280B.3(5), there is further statutory authority that permits the parties to provide in the agreement that Arrow's required payments be a lien upon Arrow's business property until paid.

■ We also agree with DMACC that it has the right by virtue of section 280B.3(5) to have the required payments impressed as a lien against Arrow's business property. That statutory right, however, does not ripen into an enforceable lien against Arrow's business property until the referred to provision is embodied in the job-training agreement. *See generally* 280B.3.

Since it is the job-training agreement that makes provisions for the lien against Arrow's business property, we conclude it falls within the definition of an "instrument affecting real estate" under Iowa Code section 558.41. Under this section, that lien, in order to be valid against subsequent purchasers for valuable consideration without notice, must be recorded in the proper county recorder's office.

It is undisputed DMACC failed to record the job-training agreement as required by section 558.41. It is clear National Travelers, as the assignee of the original mortgagee, falls within the definition of a subsequent purchaser for valuable consideration, without notice, of DMACC's lien. As such, DMACC's lien is of no validity insofar as National Travelers' lien is concerned.[9]

■ A mortgagee is regarded as a purchaser and if his mortgage is supported by actual consideration and is given and taken in good faith without fraud, the mortgagee is a bona fide purchaser for value and is protected against outstanding equities of which he has no notice. *Raub v. General Income Sponsors of Iowa, Inc.*, 176 N.W.2d 216, 219 (Iowa 1970).

DMACC argues the mailings to the Department of Economic Development, the county auditor, and the Iowa Department of Revenue and Finance, were sufficient to put the world on notice that under Iowa Code chapter 280B, a lien exists against the business property of Arrow. Like the trial court, we are unable to agree with this contention nor are we able to equate the circumstances here to those conditions that exist when property taxes are impressed as a lien against real estate.

We do agree that the legislature can provide for the perfection of liens in a manner other than filing with the county recorder. But that is not the case here. For instance, all that rule 5.4(1) of the Iowa Administrative Code requires is "at least ten days prior to the signing of an agreement, the area school is to verbally notify the department [Iowa Department of Economic Development] of their intent to enter into an agreement for training." 261 Iowa Admin.Code 5.4(1). That rule also requires the area school to notify the Iowa Department of Economic Development and the Department of Revenue and Finance in writing within thirty days of signing an agreement for training under the provisions of this act. *Id.*

Rule 5.4(3) does require the area school and the employer to notify the Department

---

**9.** Plaintiffs' mortgage was filed October 27, 1987. At that time the Dyers, as mortgagors, were the title holders of the property. In December of 1985, DMACC had entered into a job-training agreement with Arrow. Accordingly, DMACC was at that time entitled to a chapter 280B lien on Arrow's business property.

But the property in question was not the business property of Arrow in December of 1985 nor in October of 1987. The title holder to the property on those dates was the Dyers. Arrow did not take title to the property until December

of 1989, four years after the signing of the job-training agreement and in excess of two years after the filing of the plaintiffs' mortgage.

Thus, during this time frame, i.e., October of 1987, the time of the filing of the mortgage, and December of 1989, the time when Arrow acquired title to the property in question, had DMACC attempted to enforce its lien against the property in question, it would have run into formidable opposition for Arrow was not the title holder thereof. The Dyers were.

of Economic Development and the Department of Revenue and Finance within thirty days of the date of the signing of the agreement. 261 Iowa Admin.Code 5.4(3). The required notification must also be accompanied by a copy of the agreement. *Id.*

Rule 5.5 also requires that a copy of the *resolution* by the board of directors of the area school as described in Iowa Code section 280B.4 be forwarded to the Department of Economic Development with a copy of the final agreement. 261 Iowa Admin.Code 5.5. In addition, a copy of the *resolution* is to also be forwarded to the county auditor. *Id.*

From our review of each of the cited provisions of the Iowa Administrative Code and the Iowa Code, we find nothing which exhibits any intent on the part of the Iowa Legislature, that upon the completion of such mailings, a perfected lien exists in favor of DMACC. We are told in briefs that the reason the county auditor receives a copy of the resolution is because their office is responsible for withholding the wages of employees trained in the program. We are also told in briefs the reason the Iowa Department of Revenue is notified, is because the employer receives credit against its employment tax obligations to the Department of Revenue for the amounts paid to DMACC. We conclude that the notification required by the aforesaid provisions is to enable the named agencies to better administer the project and program.

■ In conclusion, we agree with the district court that chapter 280B does not automatically create a lien that is superior to another creditor's prior perfected lien, but instead it allows for the creation of a lien which must then be. perfected by recording under section 558.41. DMACC's lien cannot be of equal precedence with ordinary taxes unless and until DMACC perfects its lien through the recording process called for in section 558.41.

We find support for this interpretation of chapter 280B in the legislature's recent clarification of various Iowa Code sections which chapter 280B affects. The recent amendment to section 558.41 states in part:

An interest in real estate evidenced by an instrument so filed shall have priority over any lien that is given equal precedence with ordinary taxes under 260E or 260F, or its successor provisions, except for a lien under chapter 260E or 260F upon the real estate described in an instrument or job training agreement filed in the office of the recorder of the county in which the real estate is located prior to the filing of a conflicting instrument affecting the real estate, and a subordinate lien under chapter 260E or 260F may be divested or discharged by judicial sale or by other available legal remedy notwithstanding any provision to the contrary contained in chapter 260E or 260F, or its successor provisions.

1993 Iowa Acts ch. 180, § 91 (amending Iowa Code § 558.41 (1993)).

The recent amendment to section 554.9310 further provides in part:

A perfected security interest in collateral takes priority over any lien that is given equal precedence with ordinary taxes under chapter 260E and 260F, or its successor provisions, except for a lien under chapter 260E or 260F upon the collateral described in a financing statement or a job training agreement satisfying the requirements for a financing statement under section 554.9402, subsection 1, which is perfected by filing the financing statement or the job training agreement with the secretary of state prior to the perfection of a conflicting security interest, and a subordinate lien under chapter 260E or 260F may be divested or discharged by judicial sale, as provided in part 5 of this article 9 or by other available legal remedy notwithstanding any provision to the contrary contained in chapter 260E and 260F, or its successor provisions.

1993 Iowa Acts ch. 180, § 88 (amending Iowa Code § 554.9310 (1993)).

We conclude National Travelers' perfected lien has priority over DMACC's lien. We therefore affirm the district court.[10]

**AFFIRMED.**

All Judges concur, except SACKETT, J., who dissents without opinion.

---

10. With this ruling we need not decide what the outcome would have been had the job-training agreement been recorded. We do note that the recent amendment to Iowa Code section 558.41 has clarified the legislature's intent on this issue for subsequent cases. *See* 1993 Acts ch. 180, § 91 (amending Iowa Code § 558.41 (1993)). Nor need we decide, as urged by the parties, the constitutionality of Iowa Code section 280B.3(5).